TAKAKO DINGES, Plaintiff-Appellant, v. MYONG GABARDI *et al.*, Defendants (The County of Kane *et al.*, Defendants-Appellees).

Second District Nos. 2—89—1160, 2—89—1258 cons.

Opinion filed August 31, 1990.

GEIGER, J., dissenting.

John W. Fisk, of Kenneth C. Chessick, M.D., S.C., of Schaumburg, for appellant.

David G. Mountcastle, of Mountcastle & DaRosa, of Wheaton, for appellee John C. Hutsler, Jr.

Rita Farrell and Edgar K. Collison, both of Early, Collison, Tousey, Regan & Farrell, of Elgin, for appellees County of Kane and Nabi R. Fakroddin.

Richard J. Larson, of Larson, Mickey, Weiler, P.C., of Aurora, for appellee Myong Gabardi.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, Takako Dinges, appeals from two orders of the circuit court of Kane County, each of which dismissed one count of her complaint. The order at issue in appeal No. 2—89—1160 dismissed count III of the complaint against defendant Kane County (County). The order involved in appeal No. 2—89—1258 dismissed count V, which was against defendant Nabi Fakroddin. Plaintiff raises two issues on appeal: whether the County had a duty to warn of a downed stop sign; and whether Fakroddin, as an agent of the County, had a duty to warn of a downed stop sign.
On December 6, 1988, plaintiff filed a five-count complaint in the circuit court of Kane County. The complaint alleged that on April 26, 1987, Myong Gabardi was driving a car, in which plaintiff was a passenger, on Big Timber Road in Kane County. The Gabardi vehicle en-

tered the intersection at Route 47, and it was struck by a truck driven by defendant John Hutsler, Jr. Count I alleged that Gabardi was negligent, and count II alleged that Hutsler was negligent. Neither party is involved in this appeal.

In count III, plaintiff alleged that the County maintained a stop sign at the intersection of Big Timber Road and Route 47 and that the stop sign "had been knocked down for some time prior to" the accident in which plaintiff was injured. The downed stop sign was not visible to Gabardi as her vehicle approached the intersection with Route 47. Plaintiff further alleged that the County had notice of the hazardous condition caused by the downed stop sign and that the County failed to inspect the stop sign, to repair the stop sign, and to warn motorists approaching the intersection of the dangerous condition. In addition, the County advised plaintiff that it did not maintain the stop sign. Subsequently, plaintiff informed the Department of Transportation of her claim. The Department of Transportation denied plaintiff's claim based on lack of notice. According to plaintiff, the Department of Transportation later denied responsibility for the maintenance of the stop sign.

Count IV of the complaint alleged that the Kane County Highway Department (Highway Department) was negligent based on the negligence of its principal, the County. The trial court subsequently granted plaintiff's motion to voluntarily dismiss without prejudice the Highway Department as a defendant. Count V alleged that defendant Fakroddin, the superintendent of highways for the County, was negligent under the same theories as those alleged against the County.

Plaintiff attached to the complaint the affidavit of Joseph Kostur, the safety and claims manager for District One of the Department of Transportation. In the affidavit, Kostur stated that Route 47 was under the jurisdiction of the Department of Transportation, but that Big Timber Road was not a part of the State highway system. Kostur averred that the Department of Transportation did not have a duty to warn, regulate or control motorists traveling on Big Timber Road and that the County was responsible for Big Timber Road.

On August 18, 1989, the County filed a motion to dismiss count III of the complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), asserting the affirmative defense that the stop sign was on the Department of Transportation's right-of-way, that the County did not own or maintain the stop sign, and that the County was immune from liability pursuant to sections 3—102, 3—104, and 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill.

Rev. Stat. 1987, ch. 85, pars. 3—102, 3—104, 3—108(a)).

The County attached the affidavit of Thomas Holderby, the assistant superintendent of the Highway Department, to its motion to dismiss. Holderby stated that the Highway Department did not erect, maintain, repair, or replace the stop sign on Big Timber Road at Route 47 and that the stop sign had always been maintained, repaired and replaced by the Department of Transportation. Holderby further stated that the stop sign is located on a right-of-way purchased by the Department of Transportation. The court found that section 2—105 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 2—105) applied because the stop sign was not on the County's property, and it never erected or maintained the stop sign. Consequently, the court dismissed count III of the complaint with prejudice. Plaintiff timely filed an appeal of the order.

Fakroddin subsequently filed a motion to dismiss on the basis that, since the County was not liable for plaintiff's injuries, Fakroddin, as agent for the County, was also not liable to plaintiff. The court dismissed count V with prejudice, and plaintiff timely appealed that order. We granted plaintiff's motion to consolidate the appeals.

Plaintiff first contends that the County had a duty to warn of the downed stop sign because it regulated the flow of traffic on a road under the County's jurisdiction. Plaintiff correctly asserts that since this is an appeal of an order dismissing a complaint, all well-pleaded facts are taken as true. (See *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 514, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) Even if the complaint states a cause of action on its face, where an affirmative defense negates the cause of action, the dismissal is proper. *Land v. Auler* (1989), 186 Ill. App. 3d 382, 384-85.

To properly plead a cause of action in negligence, a plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) Plaintiff here focuses on the question of whether the County had a duty to warn of a downed stop sign which the County was not responsible for maintaining. Duty is a legal question to be decided by the court. *Kirk*, 117 Ill. 2d at 525.

The trial court found that the County was not liable because the stop sign was the State's property and, under section 2—105 of the Tort Immunity Act, the County "is not liable for injury caused by its failure to make an inspection *** of any property, other than its own" (Ill. Rev. Stat. 1987, ch. 85, par. 2—105). Plaintiff argues that even if

the County is immune from liability for failing to inspect or repair the sign, the County had a duty to warn of the dangerous condition.

In support thereof, plaintiff cites *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435. In *Janssen,* our supreme court determined that a governmental unit which controls a roadway has a duty to warn motorists of hazards adjacent to the roadway *even if* the hazard itself is not within the control of the governmental unit. *Janssen,* 79 Ill. 2d at 444-45.

Defendants contend that *Janssen* is no longer controlling because the decision relied upon section 3—104(b) of the Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 3—104(b)). Defendants correctly point out that this section was deleted by an amendment in 1986 and is no longer in effect. However, we disagree with defendants' claim that this deletion somehow affects the viability of *Janssen.* The *Janssen* decision noted that the duty to warn had been codified in section 3—104(b) (*Janssen,* 79 Ill. 2d at 450) but did not find that the duty arose from the Tort Immunity Act. Instead, the court determined that the duty arose from the long-recognized obligation of governmental units to maintain public highways within its boundaries in a safe condition. 79 Ill. 2d at 450.

■■ ■ We recognized this distinction in our recent decision in *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180. In *Battisfore,* we pointed out that *Janssen* "adopted the principle that a municipal unit which controls a roadway has a duty to warn motorists of hazards adjacent to the roadway even if the hazard itself is not within the control of the governmental unit." (*Battisfore,* 186 Ill. App. 3d at 186.) We pointed out that *Janssen "further found* that a municipality's duty to warn motorists of dangerous conditions is codified in section 3—104(b) of the Tort Immunity Act." (Emphasis added.) 186 Ill. App. 3d at 186-87.

Plaintiff correctly points out that the Tort Immunity Act does not impose duties but instead confers immunities. (*Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 770.) According to plaintiff, since the deletion of the former section 3—104(b) did not impose a new duty on local governmental entities, its deletion could not relieve a local government of a duty which preexisted the statute.

We agree with plaintiff that the duty to warn stems from the duty to maintain the public roadways in a reasonably safe condition, and does not arise from section 3—104 of the Tort Immunity Act. Furthermore, courts have determined that the immunity available under section 3—104(a) of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(a)) does not apply where a particular sign is necessary to

warn of a condition which endangers the safe movement of traffic. (See *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 577; *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 1051-52.) Prior to amendment, section 3—104(a) provided:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs." (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(a).)

Section 3—104 now states:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.)

Given that these two sections are virtually identical, we also take the position that immunity is not available to a governmental entity for the failure to warn of a condition which endangers the safe movement of traffic.

■ In addition, we disagree with defendants' contentions that sections 2—105, 3—102, and 3—108(a) of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, pars. 2—105, 3—102, 3—108(a)) provide additional affirmative defenses. Sections 2—105 and 3—102 are both inapplicable because we are concerned with the duty to warn in this case, and not the duty to inspect or maintain property in a safe condition. Section 3—108(a) is also inapplicable in our duty-to-warn analysis because this section concerns a public entity's failure to supervise an activity on public property. Given that defendants' affirmative defenses do not bar plaintiff's complaint on a duty-to-warn theory, we believe that the trial court erred in dismissing count III of plaintiff's complaint against the County.

■ We next consider defendant Fakroddin's additional affirmative defenses in support of his position that the trial court properly dismissed count V of plaintiff's complaint. Fakroddin first contends that section 2—201 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 2—201) is applicable to his case. Section 2—201 provides, in pertinent part:

> "[A] public employee serving in a position involving the de-

termination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Ill. Rev. Stat. 1987, ch. 85, par. 2—201.

Fakroddin relies upon *Mora v. State* (1977), 68 Ill. 2d 223, to support his position. In *Mora,* the plaintiff alleged that the defendant, an employee of the State Department of Transportation, should have established a no-passing zone on the highway near the point of the collision at issue. The supreme court found the defendant immune from liability, noting that the defendant, a public officer, was exercising his official discretion and was not performing a ministerial task. *Mora,* 68 Ill. 2d at 233-34.

■ We agree with defendant Fakroddin that *Mora* supports his position that he was immune from liability in this case. The task of determining whether to erect a warning sign required the exercise of judgment and discretion in this case, and thus the decision not to erect the sign, even though possibly an abuse of discretion, does not result in liability to Fakroddin. (See *Mora,* 68 Ill. 2d at 233-34; *Havens,* 175 Ill. App. 3d at 771; Ill. Rev. Stat. 1987, ch. 85, par. 2—201.) Thus, the trial court properly dismissed count V of plaintiff's complaint against defendant Fakroddin.

For the above-stated reasons, the decision of the circuit court of Kane County dismissing count V of plaintiff's complaint is affirmed. The decision dismissing count III of the complaint is reversed, and the cause is remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part.

WOODWARD, J., concurs.

JUSTICE GEIGER, dissenting:

I must respectfully disagree with my learned colleagues that count III withstands dismissal upon the plaintiff's duty-to-warn theory.

In the Tort Immunity Act (the Act), the legislature has concretely formulated the local government duty upon which the majority relies—the duty to maintain roadways in a safe condition. (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435; Ill. Rev. Stat. 1989, ch. 85 par. 3—102.) It has also, however, created local governments' immunities from liability. I do not agree with the majority's reasoning that section 3—104 of the Tort Immunity Act, which creates an immunity for the government's failure to initially provide warning signals and

signs, does not control this case.

Unlike the majority, I would not rely upon *Janssen* or cases based partly thereon. (*Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180; *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 577; *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 1051-52.) Those cases suggest a limitation on section 3—104 immunity when a signal or sign was necessary to warn of danger to safe traffic movement. However, I question whether those cases are viable under the facts of this case since the amendment of section 3—104.

In 1986, shortly before this accident, but after the accidents in the above-cited cases, the legislature modified and merged prior subsections 3—104(a) and 3—104(b) of the Act to create the current section 3—104. The new section 3—104 includes the same basic governmental immunity for failure to provide signals and signs. However, the amendment eliminated former subsection 3—104(b)'s provision that immunity was available "unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic." Ill. Rev. Stat. 1985, ch. 85, par. 3—104(b).

The deletion of the cited portion of former subsection 3—104(b) was the most significant aspect of the 1986 amendment. Thus, it is immaterial, as the majority nonetheless accurately observes, that the prior subsection 3—104(a) is virtually identical to the amended section 3—104. Because the *Janssen* court's reasoning relied at least in part upon the now deleted exception of section 3—104(b) (*Janssen*, 79 Ill. 2d at 450-51, 453), its precedential value is, in my opinion, limited following the 1986 amendment. Even assuming that *Janssen* was not affected by the 1986 amendment of section 3—104, I would find no duty for the County.

As this court has noted, the Act creates no new duties; it simply articulates the common law duty to which the subsequently delineated immunities apply. (*Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 95.) I would not find that the common-law duty to maintain a roadway in a safe condition includes the duty effectively established by the majority, that a local government must warn of a disabled State warning marker that it did not erect, maintain, or own, and that was not located on its property. Such a duty could lead to senseless consequences, such as the one in this case where a County might be obligated to seek State permission to use a State right-of-way to place some warning notice that a State-initiated and controlled stop sign was disabled.

Under the Act, the County may determine not to erect a traffic control device. The State could not by its neglect give rise to some

otherwise nonexistent County duty to maintain, inspect, or repair a State-controlled sign. (See Ill. Rev. Stat. 1989, ch. 85, pars. 2—105, 3—102(a); *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 107.) Likewise, the State could not by its neglect give rise to a County duty to warn of a failure to maintain, inspect, or repair. See *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 996.

I would affirm the court's dismissal of count III of the complaint. Consequently, I respectfully dissent from the contrary portion of the majority decision.