DWIGHT FITT, as Ex'r of the Estate of Duane Fitt, Deceased, Plaintiff-Appellant, v. THE CITY OF MATTOON *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0661

Opinion filed June 26, 1991.

474

Fritzshall & Gleason, of Chicago (Rick A. Gleason, of counsel), for appellant.

Sebat, Swanson, Banks, Garman & Townsley, of Danville (Ralph J. Swanson, of counsel), for appellee City of Mattoon.

William A. Sunderman, of Brainard, Bower & Kramer, of Charleston, for appellee County of Coles.

JUSTICE McCULLOUGH delivered the opinion of the court:
Plaintiff's decedent Duane Fitt died in an automobile accident on September 9, 1988, at the intersection of Illinois Route 45 and County Road 400 in Mattoon, Illinois. Plaintiff Dwight Fitt filed an action against defendants City of Mattoon (City) and County of Coles (County), alleging, *inter alia*, their negligent maintenance and control

of the intersection caused the death of Duane Fitt. The trial court entered summary judgment for defendants, finding the defendants owed no duty to plaintiff's decedent and the proximate cause of the accident was the negligence of a third party. Plaintiff appeals the summary judgment orders. We affirm.

The following facts are undisputed. Illinois Route 45 is a four-lane highway with two northbound lanes and two southbound lanes separated by a median strip. This road intersects in the City with County Road 400, a two-lane road extending in an east-west direction. County Road 400 is regulated by stop signs erected in traffic islands situated on the east and west edges of Route 45 where it intersects County Road 400. The stop signs were originally erected by the State in the 1960's and have since then been maintained by the State and under State control. County Road 400 to the east of Route 45 is under the control and jurisdiction of the County and County Road 400 to the west of Route 45 is maintained by the City.

On September 9, 1988, Wilbur Smith was traveling in an easterly direction on County Road 400 in a half-ton pickup. The weather was clear and the roads were dry. Smith stopped at the stop sign at the intersection of Route 45 for approximately 15 seconds, looked for other traffic on Route 45, and saw one yellow car traveling south in the westernmost lane of Route 45 with its right turn signal activated to turn west at the intersection. Smith began to cross the southbound lanes of Route 45 before the yellow car completed its right turn. Smith was halfway across the inside passing lane of the southbound lanes when plaintiff's decedent's motorcycle struck the driver's side of the pickup near the back wheels. Smith stated he never saw the motorcycle or heard any squealing before the impact.

In his complaint, plaintiff alleged defendants (1) possessed, operated, managed, maintained, or controlled the traffic control signage and devices at the intersection, including the signage on County Road 400; (2) knew the traffic control devices provided at the intersection were inadequate and improper for providing safe movement of traffic; and (3) were negligent in (a) failing to maintain or inspect the intersection, (b) allowing the intersection to become dangerous due to inadequate traffic control signs, (c) failing to provide adequate traffic control devices at the intersection, and (d) failing to warn of the existence of unsafe and dangerous conditions at the intersection. Further, plaintiff alleged the accident was a direct and proximate result of defendants' acts and failures to act.

Each defendant filed a motion for summary judgment contending it was undisputed that each had no duty to control or manage traffic

control devices at the intersection which were exclusively controlled and maintained by the State. Further, the defendants asserted the evidence established, as a matter of law, that the proximate cause of the accident was the negligence of Wilbur Smith. In support of their motions, defendants presented the deposition testimony of various State, County, and City officials familiar with the management and control of the intersection of Route 45 and County Road 400.

Murray Walker, the street superintendent for the City, testified the intersection of Route 45 and County Road 400 is within the city limits of Mattoon. Walker stated the city council and police department have jurisdiction over the replacement and maintenance of traffic control devices within the city limits but the City does not perform any such work at the intersection. Walker stated the State was responsible for the placement and regulation of the traffic devices on Route 45 and either the County or the Township of Mattoon or Paradise was responsible for traffic signs on County Road 400. Walker stated the City and State police as well as the county sheriff could issue tickets in the intersection. Walker stated the City had the responsibility for maintaining the surface of the roads at the intersection but not the traffic signs. Walker admitted the intersection was safer after traffic lights were installed after this accident and also that the City entered into an agreement in November 1988 with the State to maintain the lights and the intersection. Walker stated the agreement provided the City was responsible for repairing the lights, with the bill for any repair going to the State. Before the agreement, the City had no responsibility for maintenance of the traffic signs at the intersection. Walker assumed the State installed the stop sign which was at the intersection at the time of the accident.

Randall Malone, superintendent of highways for the County, testified the intersection was within the county limit and County Road 400 to the east of Route 45 is a county road while to the west it is a City road. Regarding County Road 400, one mile to the west of Route 45, but excluding the intersection, the City or Township of Mattoon is responsible for the erection and placement of signs. Malone stated he was the person who decided whether to erect or maintain traffic control signs and devices on county roads in the County. While County Road 400 to the east of Route 45 is a county road, according to State policies, it is not a county road within the county system up to the point where it meets and intersects with Route 45. Malone viewed an exhibit displaying the intersection of Route 45 and County Road 400 and concluded the areas on County Road 400 including the final approach on this road to Route 45 to the east and west were maintained

by the State, not the local authorities, as was the very center of the intersection of the two roads. The State's maintenance responsibilities in these areas included erection of traffic signs. Within these areas, the County was prohibited from putting up signs but could change the road surface with the State's permission. Beyond the areas on County Road 400 to the east and west which were maintained by the State, the County could put up signs which would be for County purposes, such as a curve sign to the east or a stop sign for the frontage road. Malone stated the area of the intersection maintained by the State is State property and the County needs the State's permission to erect any signs. The State is responsible for erecting signs protecting State roadways and these signs include stop signs, traffic lights, and "stop ahead" signs. Malone stated the County entered into an agreement with the State after the traffic lights were put at the intersection but this agreement was different from the agreement regarding general maintenance in effect previously.

Carroll Thomas Dunn, chief of the Bureau of Traffic (Bureau) for the Illinois Department of Transportation, testified the County maintains County Road 400, also known as highway 19, to the east of the intersection with Route 45 and the City maintains the road to the west. Dunn stated "maintenance" includes only signs in advance of the stop sign at Route 45. Dunn stated the State maintains Route 45 including where it intersects with County Road 400. On September 9, 1988, Dunn stated there were stop signs on Route 45 controlling the northbound and southbound traffic which were installed by the Bureau. Dunn described the State's right-of-way, which extends 40 feet to the east and west of Route 45 on County Road 400 and within which the State retains jurisdiction to install signs. The City and County may not put up any signs in this area which conflict with the State's stop signs. Outside the right-of-way, the City and County are free to install signs without State permission. The State installed the signs on the traffic islands at the intersection in the 1960's and continued to control them up to the day of the accident. Dunn admitted there is an area in the intersection which is within State jurisdiction but is maintained by local authorities. Technically, the local authorities have the jurisdiction to place signs in these areas, but Dunn stated the State will not allow the local authorities to erect any signs. The local authorities would have to explain why it was necessary that a sign be erected and if the State was persuaded, the State would erect the sign at no cost to the local authorities.

Dunn stated the Bureau inspects every traffic sign within a district two times a year and evaluates every year all of the State's high-

ways to determine which ones had a higher than average accident rate. This intersection was identified by the State as a high accident location for the first time in 1983. Dunn was familiar with the Route 45-County Road 400 intersection as he had travelled through it four times a year on inspection trips. In January 1988, Paradise Township wrote to the State asking that lights be installed at the Route 45-County Road 400 intersection. While Dunn did not think this intersection was any more dangerous than any other in the district, he stated it was safer after left-turn lanes and traffic lights were installed after this accident in late 1988. Dunn emphasized the City and County have no authority to install traffic lights or other traffic control devices at the intersection without the State's permission and, if the State decided traffic control devices were necessary, it would install them. Dunn was not aware of the City or County ever asking that traffic signs be installed at the intersection. Dunn wrote a letter to Malone in April 1988 conveying the news that left-turn lanes and traffic lights were proposed for the intersection and the City and County would be responsible for 5% of the cost of construction.

Dunn stated the City and County may maintain the intersection number signs at this intersection in their respective areas on County Road 400. Regarding the maintenance agreement between the State and the City and County, signed after this accident, Dunn stated before this agreement, there were agreements in effect from time to time with local authorities regarding maintenance of the intersection.

In their motions for summary judgment, defendants alleged (1) the evidence established they owed no duty to plaintiff because traffic signage of the intersection was under the exclusive control of the State; (2) section 3—104 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—104) immunized defendants from liability; and (3) the proximate cause of plaintiff's injuries was the negligence of Wilbur Smith, not the lack of maintenance of the traffic signs at the intersection.

In response to defendants' motions for summary judgment, plaintiff asserted the evidence established defendants retained some control and jurisdiction over the intersection. Moreover, defendants, who clearly controlled County Road 400 to the east and west of the intersection, had a duty to warn of hazards at the intersection by posting warning signs on County Road 400 pursuant to section 11—304 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—304).

The trial court granted defendants' motions for summary judgment, finding (1) each defendant owed no duty to plaintiff; (2) section 3—104 of the Immunity Act immunized defendants from any liability to plaintiff; and (3) the proximate cause of plaintiff's injuries was the negligence of Wilbur Smith. On appeal, plaintiff reasserts the same arguments he raised in the proceedings below.

The purpose of summary judgment proceedings is to ascertain whether there is an issue of fact to try and not to try the fact issue. (*Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97.) Thus, summary judgment is proper where the pleadings, affidavits, and depositions on file show there is no genuine issue of material fact and, therefore, the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 452 N.E.2d 649.) The trial court must construe the pleadings, affidavits, and depositions in the light most favorable to the nonmoving party. (*Wilmere v. Stibolt* (1987), 152 Ill. App. 3d 642, 646, 504 N.E.2d 916, 918.) Summary judgment will not be reversed absent an abuse of discretion by the trial court such that the plaintiff's right to fundamental justice is violated. *West v. Kirkham* (1991), 207 Ill. App. 3d 954, 958, 566 N.E.2d 523, 525.

In a negligence action, the question of duty is one of law decided by the trial court. (*Griglione v. Town of Long Point* (1989), 184 Ill. App. 3d 20, 539 N.E.2d 1348.) Similarly, the question of the division of responsibility between various governmental agencies for road maintenance is generally one of law for the courts. *Bentley v. Saunemin Township* (1979), 77 Ill. App. 3d 598, 602, 396 N.E.2d 285, 288.

At the outset, we discern there are two questions involved in ascertaining whether defendants owed plaintiff a duty: whether the defendants maintained any jurisdiction *over the intersection* and what jurisdiction over County Road 400 the defendants retained. While a negative answer to the former may absolve defendants of liability in the intersection, the second question must also be considered. See *Heintz v. Vorwerk* (1983), 115 Ill. App. 3d 899, 451 N.E.2d 551.

Plaintiff first argues summary judgment was improper because Dunn's testimony regarding two schematic diagrams of the intersection, which were admitted into evidence, established the defendants have authority to erect traffic signs in the intersection. Plaintiff distorts the evidence. Dunn's actual testimony was that the City and County could erect signs on County Road 400 *in advance of* the intersection but they had *no* authority or jurisdiction to maintain or control the stop signs erected at the intersection by the State, or to erect

any other traffic signs in the intersection. As to the diagrams, Dunn testified the defendants had "jurisdiction" to erect signs in the intersection, which was described as "State jurisdiction maintained by locals," *but the State would not allow the defendants to erect any signs in this area.* The evidence was undisputed that the responsibilities of the City and County in the intersection and on County Road 400 immediately adjacent to Route 45 extended only to the maintenance of the road surface. Section 11—303 of the Code provides the State is responsible for placing and maintaining traffic control devices on State highways and local authorities may not erect any traffic control signs on such highways without permission of the State. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—303.) The fact that each party's law enforcement officials could enforce traffic laws in the intersection is irrelevant to the issue of who had the responsibility and duty to maintain traffic control devices at the intersection.

■■ ■ Plaintiff also contends summary judgment was improper because defendants have a duty under section 11—304 of the Code to erect warning signs on County Road 400 in advance of the intersection. Section 11—304 provides:

> "Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—304.)

This section, which requires local authorities to post signs to regulate, warn, and guide traffic on highways under their maintenance jurisdiction, "imposes an obligation on local authorities to warn motorists of those hazards which are incident to that portion of a highway which remains under local maintenance jurisdiction." (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 448, 404 N.E.2d 213, 219.) Here, the only portions of the highways involved in this case which remained under the local jurisdiction of the defendants were those areas *beyond* 40 feet to the east and west of Route 45 on County Road 400. In these areas, the defendants could post signs such as curve signs or a stop sign at the frontage road.

■ ■ While section 11—304 of the Code imposes an obligation on local authorities to post warning signs, section 3—104 of the Immunity Act immunizes local authorities from any tort liability for failing to fulfil this duty. Section 3—104, which was substantially changed effective November 25, 1986, provides:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1989, ch. 85, par. 3—104.)

Plaintiff argues this provision does not provide defendants with immunity because his complaint does not allege defendants failed to *initially* provide traffic control devices *in the intersection*. As stated, defendants have no control or jurisdiction to erect any traffic control devices in the intersection. Plaintiff does not address the effect of this provision on defendants' obligation to provide warning signs on County Road 400 *in advance of* the intersection. However, we conclude section 3—104 provides defendants with the complete defense of immunity from liability to plaintiff for failure to act in accordance with section 11—304 of the Code. While we agree with plaintiff that the Immunity Act, being a derogation of the common law, must be strictly construed against the local public entity (*Davis v. Chicago Housing Authority* (1988), 176 Ill. App. 3d 976, 979, 531 N.E.2d 1018, 1020, quoting *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 270 N.E.2d 415), where the language of a statute is clear, the court must give it effect. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) We find no ambiguity in section 3—104.

Plaintiff relies on *Janssen*, where the supreme court determined local authorities were liable under sections 11—303 and 11—304 of the Code (Ill. Rev. Stat. 1973, ch. 95½, pars. 11—303, 11—304) for failing to warn of hazards on a State road which was under the jurisdiction of State and local authorities. The hazard in *Janssen* was adjacent to the roadway and not within the control of the local governmental unit. *Janssen* is distinguishable first on its facts and second, and more importantly, because the law relied upon in part by the court has changed significantly. In *Janssen*, unlike here, the road involved was subject to the mixed jurisdiction of the State and local authorities. Further, in support of its conclusion, the *Janssen* court relied on sec-

tion 3—104(b) of the Immunity Act, repealed in 1986, which provided as follows:

"Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Ill. Rev. Stat. 1973, ch. 85, par. 3—104(b).)

The current version of section 3—104 grants immunity to local authorities for failing to initially provide traffic regulating signs and "warning sign, device or marking." (Ill. Rev. Stat. 1989, ch. 85, par. 3—104.) *Janssen* is of no help to the plaintiff. In *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 560 N.E.2d 974, the court concluded *Janssen* is no longer controlling because section 3—104 contains a broadened version of former subsection (a) and immunizes Illinois municipalities from liability for failing to post any traffic warnings. We agree with the *Newsome* court and find the trial court properly found defendants immune from liability to plaintiff based on section 3—104 of the Immunity Act.

In his reply brief, plaintiff asserts *Newsome* is not well reasoned and this court should follow *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 560 N.E.2d 21. In *Dinges*, a case arising under the current version of section 3—104, the plaintiff alleged, *inter alia*, that the local authorities failed to warn motorists that a stop sign on a county road at an intersection with a State road had been knocked down. Plaintiff further alleged that when she traveled through the intersection, there was no stop sign and she did not see the downed stop sign. The local authority in *Dinges* raised section 3—104 as an affirmative defense. The trial court agreed with the defendant and dismissed plaintiff's complaint. The Second District Appellate Court reversed, finding *Janssen* was still good law and that those decisions interpreting former section 3—104(a) (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(a)), which was "virtually identical" to the current version of section 3—104, were controlling.

We find *Dinges* is distinguishable on its facts and disagree with its analysis of the law. In the case presented, there is no evidence that the stop sign at the intersection was not seen or obeyed by Smith. As to the law applied in *Dinges*, that court found former section 3—104(a) was "virtually identical" to section 3—104. We disagree and note former section 3—104(a) did not provide absolute immunity

to local authorities for their failure to post *warning signs* while the current version of section 3—104 expressly grants such immunity. We emphasize the following language added to section 3—104 which is *otherwise* identical to former section 3—104(a):

> "Neither a local public entity nor a public employee is liable *** for an injury caused by the failure to initially provide regulatory traffic control devices *** *or warning sign, device or marking, signs, ***."* (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 3—104.)

This language distinguishes *Dinges*, a case arising under this section, from the cases it relied upon which construed former sections 3—104(a) and 3—104(b) (*Janssen*, 79 Ill. 2d 435, 404 N.E.2d 213; *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19; *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 425 N.E.2d 1223), a fact noted by Justice Geiger in his dissent (*Dinges*, 202 Ill. App. 3d at 738, 560 N.E.2d at 25 (Geiger, J., dissenting)). As noted, we find *Newsome* supports our conclusion.

In light of our conclusion on the first issue, a discussion of the proximate cause issue is not necessary.

■■■ Finally, plaintiff contends the deposition testimony of Murray Walker did not meet the requirements of Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) and, therefore, summary judgment should not have been granted. Rule 191(a) directs, in pertinent part, that affidavits in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant and shall affirmatively show the affiant, if sworn as a witness, can testify competently thereto. Supreme Court Rule 212(a)(4) provides discovery depositions taken under Rule 212 may be used for any purpose for which an affidavit may be used. (134 Ill. 2d R. 212(a)(4).) Depositions used in support of or against a motion for summary judgment must comply with Rule 191. *Stando v. Grossinger Motor Sales, Inc.* (1980), 89 Ill. App. 3d 898, 412 N.E.2d 600.

The City submitted the discovery deposition of Walker in support of its motion for summary judgment. Throughout much of his testimony, Walker stated he either "did not know," "was unaware," or "had no idea" in response to the questions posed regarding who was responsible for maintenance in the intersection and on County Road 400. On appeal, the City contends Walker's testimony was used only to support its contention that it had not maintained County Road 400 *immediately to the west* of the intersection with Route 45. According to the City, Walker's testimony on this issue was within his personal

knowledge and, thus, properly considered in support of the motion for summary judgment.

We agree with the City. As street superintendent for the City, Walker would have knowledge of the City's obligations regarding County Road 400 to the west and, therefore, be competent to testify within his knowledge that the City did not perform any maintenance on this portion of the road. Further, even if portions of Walker's deposition testimony may not comply with Rule 191(a), there was sufficient additional evidence to support the trial court's order granting summary judgment for the defendant. This fact distinguished this case from *Stando*, relied upon by the plaintiff.

For the foregoing reasons, the orders of the trial court granting summary judgment for defendants are affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.