DONALD E. GRESHAM, Adm'r of the Estate of Carol Gresham, Deceased, Plaintiff-Appellant, v. LLOYD A. KIRBY et al., Defendants-Appellees.

Fourth District   No. 4—91—0212

Opinion filed June 11, 1992.

William A. Allison, of Allison & Kelly, of Bloomington, for appellant.

Ancel, Glink, Diamond & Cope, P.C., of Chicago (David Lincoln Ader and Jennifer A. Pritz, of counsel), for appellee Town of Normal.

William F. Costigan and Robert S. White, both of Costigan & Wollrab, P.C., of Bloomington, for appellee Lloyd A. Kirby.

JUSTICE COOK delivered the opinion of the court:

Plaintiff Donald E. Gresham, administrator of the estate of Carol Gresham, deceased, filed this wrongful death action against defendants, the Town of Normal (Town) and Lloyd Kirby. The Town's motion for summary judgment was granted. A jury found in Kirby's favor. Plaintiff appeals the grant of summary judgment. We affirm.

On July 5, 1988, Carol Gresham died in an automobile accident at the intersection of College Avenue and U.S. Route 150 in Normal, Illinois. Decedent approached the intersection from the southwest on

College Avenue, a two-lane road owned and maintained by the Town; the road had a posted speed limit of 30 miles per hour. Kirby approached the intersection from the southeast on Route 150, a two-lane highway owned and maintained by the State of Illinois Department of Transportation (IDOT); the highway had a posted speed limit of 55 miles per hour. There were stop signs on both College Avenue approaches to the intersection, and no stop signs or other traffic devices on either Route 150 approach. Route 150 traffic accordingly had the right of way. Upon entering the intersection, decedent's step van was struck by Kirby's automobile, resulting in decedent's death. The intersection was first opened in November 1987. There had been at least eight accidents at the intersection before this one, including a fatality in April 1988. After this accident, the Town added two more stop signs for traffic on College Avenue, to the two already present, and placed red flags on top of all four stop signs.

Plaintiff filed a wrongful death action against Kirby, then an amended four-count complaint adding the Town as a defendant. This appeal concerns counts II, III and IV directed against the Town.

The Town averred it was entitled to summary judgment because (1) on the date of the accident, it had no authority to place any traffic regulatory devices on Route 150, which was under the jurisdiction of the State; (2) it did not owe the decedent any duty to warn her as to the condition of the intersection; (3) it was immune from liability under section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—104); and (4) none of its alleged acts were the proximate cause of decedent's death. The court granted the Town's motion for summary judgment.

■ Summary judgments are desirable where the pleadings, affidavits, and depositions show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420-21; *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 479, 574 N.E.2d 1275, 1279.) It was formerly held that when a defendant moved for summary judgment defendant was required to show it was not possible that plaintiff could prove his case, that is, defendant was required to negate plaintiff's case, even though plaintiff had the burden of proof at trial. (See, *e.g., Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961-62.) More recent cases make it easier for defendants to obtain summary judgment, holding it sufficient for defendant to point out an absence of some element of evidence to support plaintiff's

case. (*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2554; *Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 101, 468 N.E.2d 477, 481-82; *Lindenmier v. City of Rockford* (1987) 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201, 1207 ("When a defendant files a motion for summary judgment, the plaintiff must come forward with evidence of negligence on the part of the defendant and with evidence that defendant's negligence was a proximate cause of the plaintiff's injuries"); see Schwarzer, Hirsch & Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 449-51, 478 (1991).) In this case, defendant attempts to negate plaintiff's case by showing there was no duty on its part. The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case to determine whether the trial court was correct. *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.

In order to recover in tort for negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Wojdyla,* 148 Ill. 2d at 417; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 86, 522 N.E.2d 215, 217; *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 735, 560 N.E.2d 21, 23.) The existence of a duty must be determined by the courts as a matter of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116, 118; *Fitt,* 215 Ill. App. 3d at 479, 574 N.E.2d at 1279.) If no duty exists, no recovery is possible as a matter of law, and summary judgment for defendant is proper. *Beal v. Kuptchian* (1987), 164 Ill. App. 3d 191, 193, 517 N.E.2d 712, 714.

Count II of plaintiff's amended complaint was based on section 3—103(a) of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—103(a)), which makes a local public entity liable for the creation of a condition that is not reasonably safe. Plaintiff alleged that the Town had agreed with the State to reconstruct the intersection and to build it in accordance with the plans and specifications approved by the State. According to the plans, College Avenue would be a through street and traffic on Route 150 would stop at the intersection. Nevertheless, the Town built the intersection with Route 150 as the through street, with traffic on College Avenue to stop. Plaintiff asserted this failure created a "condition that was not reasonably safe for motorists" and was the proximate cause of decedent's death. However, regardless of whether the Town had a duty not to deviate from the approved plans, plaintiff

could not establish that the Town breached such a duty because the Town had no duty or authority to place stop signs on Route 150.

■ At the time of the accident the State had jurisdiction of Route 150; jurisdiction was eventually transferred to McLean County after the accident. Sections 11—303(a) and (b) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—303(a), (b)) provide the State is responsible for placing and maintaining traffic control devices on all highways under its jurisdiction, and local authorities shall not erect any traffic control devices on any State highway except by the State's permission. (*Fitt*, 215 Ill. App. 3d at 480, 574 N.E.2d at 1279.) Moreover, when roads and highways of larger and lesser governmental entities intersect, section 11—302 of the Code places the responsibility for the erection and maintenance of stop signs and the designation of through highways at the intersections upon the larger governmental entity. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—302; *Griglione v. Town of Long Point* (1989), 184 Ill. App. 3d 20, 28, 539 N.E.2d 1348, 1353, citing *Burris v. Madison County* (1987), 154 Ill. App. 3d 1064, 1073, 507 N.E.2d 1267, 1273.) The Town could not place stop signs on Route 150 because that power was exclusively vested in the State.

The agreement between the Town and the State contains no specific authorization giving the Town authority to erect traffic control devices, other than an at-grade signalized crossing at the Norfolk & Southern railroad. The agreement clearly obligated the Town to construct the improvements according to the plans, but nothing in the language gave the Town the authority to erect traffic control devices at the intersection of College Avenue and Route 150. This contention is supported by the testimony of Edmund R. Wallens, IDOT bureau of traffic chief, that the joint agreement only made the Town responsible for the traffic control devices on College Avenue, and is reinforced by letters Wallens received from Town officials asking IDOT to act with regard to the intersection. Under the Code, the Town could not place stop signs on Route 150 because that power was reserved to the State, unless specific permission was given to the Town. Contrary to plaintiff's argument, the agreement did not authorize the Town to erect traffic control devices on Route 150. Summary judgment on count II was appropriate.

As plaintiff states in his brief, the only difference between count II and count III "is that count III suggests the action which the Town failed to take once the dangerous condition became known." The measures the Town failed to take were (1) to close the intersection to traffic on College Avenue, (2) to provide a four-way stop as recommended

by a Town official's letter to Wallens, (3) to condition motorists on Route 150 or College Avenue to the changes at the intersection as recommended by the Town official's letter, and (4) to warn traffic on College Avenue of the dangerous condition. Again, the allegations that the Town was negligent in failing to take some action regarding Route 150 must fail because Route 150 was under the jurisdiction of the State, and the Town had no duty or authority to place signs on it or close it.

A different analysis must be applied to the allegations that the Town failed to close or place adequate signs on College Avenue. Under section 11–304 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11–304), local authorities are required to post signs to regulate, warn, and guide traffic on highways under their maintenance jurisdiction. Section 11–304 " 'imposes an obligation on local authorities to warn motorists of those hazards which are incident to that portion of the highway which remains under local maintenance jurisdiction.' " (*Fitt*, 215 Ill. App. 3d at 480, 574 N.E.2d at 1280, quoting *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 448, 404 N.E.2d 213, 219.) The Town had authority to post signs to warn traffic on College Avenue of the changes to the intersection and that College Avenue traffic stopped but Route 150 traffic did not.

While section 11–304 of the Code imposes an obligation on local authorities to post warning signs (see also section 3–102(a) of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 3–102(a)), discussed below), section 3–104 of the Act immunizes local authorities from any tort liability for failing to fulfill this duty. Section 3–104 of the Act provides:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." Ill. Rev. Stat. 1989, ch. 85, par. 3–104.

The Town cannot be liable for the failure to post warning signs even if such failure was negligent and was a cause of plaintiff's injury. This section provides the Town with complete immunity from liability for the failure to warn traffic traveling on College Avenue of the alleged dangerous intersection. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 5-12, 588 N.E.2d 1104, 1106-09; *Fitt*, 215 Ill. App. 3d at 481, 574 N.E.2d at 1280.) Summary judgment was properly entered on count

III. Section 3—104 immunity is also a justification for the grant of summary judgment on count II, assuming the Town had the duty or authority to place signs on Route 150. The trial court did not discuss immunity in its order granting summary judgment, but we may affirm for any reason or ground appearing in the record, irrespective of the reasons assigned by the trial court. *Farmers State Bank v. Webel* (1983), 113 Ill. App. 3d 87, 92, 446 N.E.2d 525, 528, citing *Harrison v. Kamp* (1946), 395 Ill. 11, 21, 69 N.E.2d 261, 267.

Plaintiff's argument that the Town should have closed the road is designed to avoid the language of section 3—104. That section speaks of "warning sign[s]" and "traffic control devices," but says nothing of closing a road. Plaintiff's argument, if accepted, would change the result in most of the cases finding immunity under section 3—104. In *West*, for example, plaintiff would have argued, not that the city should have provided a left-turn arrow, but that the city should have closed Lincoln Avenue. We reject the idea that the policy considerations underlying *West* and the other cases in this area could be so easily overcome. In any event, a municipality would close a street by "restraining devices" or "barriers," and a Town's failure to provide those devices is completely immune from liability under section 3—104.

Finally, plaintiff alleged that count IV was based on section 3—102(a) of the Act, which requires a local public entity to maintain its property in a reasonably safe condition for the benefit of intended users when it has notice of an unsafe condition. Plaintiff alleged that notwithstanding its duty to maintain its property, the Town was guilty of one or more of the following acts: (1) allowing traffic on College Avenue when it knew that it was not built according to the plans; (2) failing to warn motorists on College Avenue of the hazard created by the intersection; (3) failing to build the intersection in accordance with the plans; (4) failing to build the intersection, taking into account the safe movement of the traffic, in accordance with the plans; (5) placing the stop sign on College Avenue so it would not reasonably be seen in time to stop at the intersection; (6) placing stop signs on College Avenue without conducting an engineering study; (7) failing to close the intersection; (8) failing to provide a four-way stop; (9) failing to condition motorists traveling on Route 150 or College Avenue to the changes at the intersection; and (10) failing to install intersection control beacons.

The Act creates no new duties but merely codifies those existing at common law. (*West*, 147 Ill. 2d at 14, 588 N.E.2d at 1110; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 92, 523 N.E.2d 594,

603.) The traditional common law duty of local governments concerning public property was one to maintain that property in a reasonably safe condition. (*Curtis*, 98 Ill. 2d at 163, 456 N.E.2d at 119; *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 432, 495 N.E.2d 1259, 1262.) Once a public improvement was actually constructed, the municipality had a duty to maintain it in a reasonably safe condition; however, no liability could be imposed for the failure to undertake the improvement in the first place. *Swett*, 169 Ill. App. 3d at 92, 532 N.E.2d at 603; see also *Horrell*, 145 Ill. App. 3d at 432, 495 N.E.2d at 1262; *Ross*, 168 Ill. App. 3d at 87, 522 N.E.2d at 218.

■ Most of the allegations of count IV do not apply to any duty of maintenance. Plaintiff does not allege that the death of the decedent was caused by a state of disrepair or deterioration of the intersection, or for any other failure of maintenance. (See *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 428-29, 339 N.E.2d 779, 782; *Ross*, 168 Ill. App. 3d at 87-89, 522 N.E.2d at 218-19.) Rather, plaintiff argues that the Town had a duty to build the intersection in accordance with the plans, to warn or condition motorists on Route 150 and College Avenue, to close the intersection, to provide a four-way intersection, and to install intersection control beacons—all as part of its duty to maintain its property under this section. The duty of maintenance does not include such activities. The State had placed stop signs on College Avenue, which was under the jurisdiction and control of the Town. The Town did have a duty to maintain these stop signs. (See *Griglione*, 184 Ill. App. 3d at 28, 539 N.E.2d at 1348; *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242.) As the trial court found, there was no evidence to show that the Town had breached this duty.

Finally, section 3—102(a) of the Act requires a local entity to maintain its property in a reasonably safe condition, "[e]xcept as otherwise provided" (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)), but section 3—104, granting immunity for the initial failure to provide traffic control devices, is a section which "otherwise provides." The obligation to provide traffic control devices is expressly excluded from the purview of the general duty to maintain found in section 3—102(a). (*West*, 147 Ill. 2d at 14, 488 N.E.2d at 1110.) Section 3—102(a) of the Act does not provide a basis for the Town's duty to decedent, and summary judgment was appropriate on this count.

Because we find that summary judgment was appropriate as to each of the three counts, there is no need for us to address the Town's contention that summary judgment could have been granted

on the basis that plaintiff failed to establish that the Town's acts or omissions were the proximate cause of decedent's death.

Similarly, we need not address plaintiff's argument that if this court finds error in the grant of summary judgment, the case should be remanded for a new trial against *both* defendants. Plaintiff originally took an appeal both as to the Town and as to Kirby, the driver of the other vehicle. After plaintiff filed his brief, plaintiff and defendant Kirby filed a motion to dismiss the appeal against Kirby, contending they had entered into a good-faith settlement relating to that cause of action. (See Ill. Rev. Stat. 1989, ch. 70, pars. 302(c), (d).) The Town objected, arguing it might be entitled to contribution from Kirby in the event we reversed the summary judgment. We grant the motion to dismiss the appeal as to Kirby.

The judgment of the trial court is affirmed.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.