MICHAEL GEEVER *et al.*, Plaintiffs-Appellants, v. O'SHEA AND SONS BUILDERS, INC., Defendant-Appellee (Steeple Hill Condominium Association *et al.*, Defendants).

First District (1st Division)   No. 1—91—0021

Opinion filed August 3, 1992.

Donald A. Kurasch, Ltd., of Chicago (Donald A. Kurasch and Jessica B. Tucker, of counsel), for appellants.

Robert Schey & Associates, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs Michael Geever, Scott Swensen and James Sachs appeal an order of the circuit court of Cook County granting summary judgment in favor of defendant O'Shea and Sons Builders, Inc. (O'Shea and Sons), regarding count III of plaintiffs' second amended complaint in a personal injury action.[1] For the reasons which follow, we affirm.

The record on appeal indicates the following facts. Plaintiffs initially filed their personal injury suit against defendants on May 13, 1987. The trial court permitted plaintiffs to file a second amended complaint on March 9, 1990. Count III of the second amended complaint alleged that on January 17, 1987, defendants Steeple Hill Condominium Association (SHCA), Walter J. Kassuba, Kassuba Development Corp., Mark Holecek and unknown owners owned, operated and controlled a residential building in the City of Hoffman Estates, consisting of apartments leased or rented to various tenants. Plaintiff Geever resided in unit 313, which was on the third floor of this building; Geever rented this unit from defendant Holecek. On January 17, 1987, plaintiffs Swensen and Sachs were Geever's guests on the premises. At 1:30 a.m., the railing on the balcony of unit 313 broke and gave way; plaintiffs fell to the ground and were injured.

Count III alleges that both prior and subsequent to January 17, 1987, defendant O'Shea and Sons provided carpentry repair work for the building at issue. The complaint alleges that O'Shea and Sons negligently: (1) permitted the balcony with metal railing to assume and remain in a dangerous, decayed, rotten and unsafe condition; (2) failed to make this condition known to plaintiffs; (3) failed to repair the balcony and railing; (4) failed to inspect the balcony and railing when repairs to other balconies on the premises were made; and (5) otherwise failed to inspect or repair said balcony. O'Shea and Sons' answer denied that it was negligent with respect to the balcony at issue and denied having performed carpentry work on the balcony before January 17, 1987.

A number of discovery depositions were taken by the parties. Charles G. Corley, the president of the SHCA, stated that in December 1985, the condominium board of managers discussed an incident

---

[1]Defendants Steeple Hill Condominium Association, Walter J. Kassuba, Kassuba Development Corp., North American Construction Corp., S & N Construction Corp., Mark Holecek, unknown owners, unknown others, American Marketing Company, Inc., Carol Bycowicz and A.G. Freiman & Associates are not parties to this appeal.

where a balcony broke away from a building in an apartment complex in the Village of Elk Grove. The board of managers, noting the age of the buildings in the SHCA, agreed that a structural engineer should be retained to inspect the balconies in their complex. The board of managers retained the firm of A.G. Freiman and Associates as structural engineers. The Board of Managers also retained O'Shea and Sons, who had prior experience doing carpentry work for the complex.

Corley stated that he felt that John O'Shea should accompany John Miller, an employee of A.G. Freiman, during the inspection of each balcony. The balconies were inspected in March and April of 1986. According to Corley, there were more than 300 balconies inspected.

A letter from A.G. Freiman to the SHCA dated April 22, 1986, indicates that John Miller concluded that some of the balconies were very dangerous due to rotting wood in the balconies and supporting joists. Miller recommended that these balconies be roped off from use pending repair. Miller also opined in the letter that, based on the inspection, all of the balconies were suspect.

Peggy Durkin, the property manager for SHCA, stated in her deposition that A.G. Freiman determined that the "worst" balconies—those with rotting wood in the balconies and floorboards—should be repaired first. The individual notes on each balcony were taken by John O'Shea. Letters were sent to each unit owner stating that each owner had the obligation to repair his or her balcony and that the work could be performed by O'Shea and Sons or by any other qualified carpenter.

John Hunt, the maintenance supervisor for the SHCA, indicated that O'Shea and Sons was retained to inspect the balconies and that he accompanied John O'Shea during these inspections. O'Shea made notes on each balcony under guidelines provided by A.G. Freiman. Hunt stated that O'Shea had him get in touch with A.G. Freiman regarding balconies where O'Shea did not know how to proceed. After the balcony inspections were completed, A.G. Freiman was called out to look at 55 balconies that "looked serious." According to Hunt, the balcony for unit 313 was not among these 55 balconies. As a result of this later inspection, it was determined that 25 balconies needed immediate attention; repairs were completed on these balconies as soon as possible. After the first 25 balconies, O'Shea and Sons was to make the remaining repairs building by building. Hunt stated that in December 1986, the weather became cold, with snow and freezing rain, to the point where it became unsafe to work on ladders and balconies

without railings. According to Hunt, O'Shea and Sons decided that the balcony repairs should be curtailed until the following spring; the board of managers concurred.

John Michael O'Shea, president of O'Shea and Sons, stated that he inspected over 300 balconies at the Steeple Hill Condominiums and had no specific recollection regarding the balcony for unit 313. O'Shea stated that on each balcony, he checked the railings, deck, floorboards, joists and dividers. O'Shea would place his ladder against the building or deck and "physically yank" on the railing before climbing onto each balcony. O'Shea stated that his notes on unit 313 indicated that the deck required replacement of three deck boards, joist and divider repairs and rebolting of the wrought-iron railing. As to the railing, O'Shea stated that some of the railings were nailed or screwed. The proper way to attach such a railing is with lags, which have hexagonal heads that are ratcheted into the exterior wood. According to O'Shea, if a railing had been loose, it would have been noted, but there was no such indication in his notes on unit 313.

O'Shea further stated that the balcony for unit 313 was not one of those closed off from use pending repair. The balconies that were repaired first were on a list prepared by SHCA, based on A.G. Freiman's recommendations as to which balconies were in the worst condition.

At O'Shea's deposition, counsel referred to two contracts: the first concerned 1986, the second concerned 1987. Counsel asked O'Shea about a term in the 1987 contract which purportedly stated "Work to commence no later than April 1st, 1987 and completed no later than November 1st of 1987." O'Shea stated that these were projected dates and that not all repairs were to be completed by November 1, 1987. Rather, O'Shea and Sons was to complete those repairs which could be completed by November 1, 1987, within that time frame. According to O'Shea, work continued after November 1, 1987.

O'Shea stated that he did not work on unit 313 until January 19, 1987, at which time he replaced the railing. Other repairs on the unit 313 balcony were completed in October 1987. O'Shea did not know what caused the railing to break loose. He did not believe that the force of a 150-pound person leaning on the railing would cause it to break loose.

On July 10, 1990, O'Shea and Sons filed a motion for summary judgment. On November 20, 1990, the trial court granted the motion and found no reason for delay in the enforcement or appeal of its order. Plaintiffs timely filed a notice of appeal to this court.

Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) In order to withstand a motion for summary judgment, the nonmoving party must come forward with evidentiary material that establishes a genuine issue of fact. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.) Absent an abuse of discretion by the trial court, summary judgment will not be reversed. *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.

■ On appeal, plaintiffs do not point to any evidentiary material establishing a genuine issue of fact. Plaintiffs argue that O'Shea's statement that the railing for unit 313 was not loose when inspected is "nonsensical[,] given the fact that O'Shea admitted that unit 313 was scheduled for repairs." The record indicates that unit 313 was scheduled for various repairs. Indeed, the record indicates that the railing at issue was scheduled to be reattached to the building with lags. However, the record also indicates that O'Shea stated that if the railing had been loose, it would have been noted at the time of inspection and no such notation was made. Thus, the fact that the railing was to be reattached with lags does not require the inference that the railing was loose when inspected. Moreover, plaintiffs have failed to point to any evidence in the record indicating that the railing became loose at a later date.

■ Plaintiffs next argue:

> "Given the fact that the structural engineer found all balconies to be suspect, given the fact that O'Shea found repairs necessary, including replacing the railing attachments, and given the fact that the balcony was not repaired prior to the occurrence, one could easily infer that O'Shea had a duty to reinspect the balcony for further decay and rot."

Plaintiffs contend that whether a breach of this duty occurred is a question of fact.

O'Shea and Sons undertook the inspection and repair of the SHCA balconies as an independent contractor. In *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, our supreme court stated:

> "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying

upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." (*Hunt*, 74 Ill. 2d at 209, 384 N.E.2d at 371.)

In this case, the Corley deposition indicates that O'Shea acted under the instruction of SHCA and the guidelines of A.G. Freiman. O'Shea's deposition indicates that he was told by SHCA or someone else to note balconies attached with nails or screws so that the balconies could be reattached with lags. Plaintiffs have failed to point to any evidence in the record that the instructions and guidelines required reinspection. Nor have plaintiffs pointed to any evidence in the record that any failure to include reinspection was so obviously dangerous that no competent contractor would have followed the instructions or guidelines. Thus, this court declines to "infer" a duty to reinspect the balcony for unit 313.

Moreover, plaintiffs have failed to point to any of the contracts involved in this case to establish that defendant was required to make repairs to unit 313 prior to the occurrence at issue in this case.

Plaintiffs argue that the fact that the unit 313 balcony was not one of the 25 balconies roped off from use pending repair does not require the conclusion that the balcony was structurally sound. However, plaintiffs have failed to point to evidence in the record indicating that the railing was unsound pending reattachment with lags.

■ Finally, as in *Stines v. Otis Elevator Co.* (1982), 104 Ill. App. 3d 608, 432 N.E.2d 1298, plaintiffs have failed to point to evidence that defendant's inspection was negligently performed or if it was that it was causally related to the occurrence at issue. (See *Stines*, 104 Ill. App. 3d at 611, 432 N.E.2d at 1300.) This court determined that summary judgment was premature in *Stines*, but the defendant in *Stines* performed inspections or maintenance on dates that had not been determined as of the hearing on summary judgment. Indeed, in *Stines*, this court noted that the defendant could again move for summary judgment following discovery regarding the undetermined inspection dates. (See *Stines*, 104 Ill. App. 3d at 611, 432 N.E.2d at 1300.) In this case, there is no contention that plaintiffs have not had adequate discovery regarding this defendant. Consequently, the entry of summary judgment was not premature.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'CONNOR and MANNING, JJ., concur.