MARTHA BUBB, Indiv. and as Mother and Natural Guardian of Amy M. Pavolko, Plaintiffs-Appellants, v. EVANS CONSTRUCTION COMPANY, Defendant-Appellee (Springfield School District 186, Defendant).

Fourth District   No. 4—93—0683

Opinion filed December 30, 1993.

William J. Connor, of Berg, Robeson & Connor, P.C., of Springfield, for appellant.

D. Bradley Blodgett, of Hinshaw & Culbertson, of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff Martha Bubb, individually and as mother and natural guardian of Amy M. Pavolko, filed a complaint against defendants Evans Construction Company and Springfield School District 186 seeking damages resulting from an injury Amy suffered while riding her bicycle on school property. Evans, which constructed the sidewalk upon which Amy was riding her bicycle, filed a motion for summary judgment. The trial court granted the motion for summary judgment and plaintiff appeals. We affirm.

On September 14, 1990, Amy, a student at Enos School in Springfield, Illinois, lost control of her bicycle when her front tire

left a concrete walk and struck an adjacent grassy area. Amy sustained a fracture through the distal radius and dislocation of the ulna. Plaintiff filed a complaint alleging that Evans was negligent in the manner in which it performed its work in putting in the sidewalk in question for the school district. Specifically, plaintiff alleged Evans:

"a) Failed to properly grade the area between the concrete walkway and the grassy area[,] thereby leaving a 4-inch or more gap in height between the concrete and the grass.

b) Failed to inspect the concrete walkway after completion of the work for proper grading.

c) Failed to employ competent personnel[,] resulting in improper laying of the concrete walkway.

d) Failed to warn the Plaintiff or others of the dangerous condition of the walkway[,] although it knew or[,] in the exercise of ordinary care[,] ought to have known of it.

e) Failed to re-inspect [the] area around [the] concrete walkway to check for subsidence when[,] in the exercise of reasonable care[,] they knew or should have known that this area would subside."

Prior to December 8, 1989, Evans entered into a written agreement with Springfield School District to perform certain construction activities at the Enos School. The project included the construction of sidewalks around the school building. Pursuant to the architectural drawings prepared by the project architect hired by the school district, the newly constructed sidewalk and adjacent dirt were left flush, of equal height, and matching the existing grade. After Evans completed the work, the project architect inspected the completed sidewalks and found that they were as specified in the contract documents. The architect further noted that the adjacent dirt was graded to the level which satisfied the project plan and could not have been more firmly packed down, otherwise reseeding of the lawn could not take place. On September 5, 1989, the project architect signed a certificate of substantial completion, and on December 8, 1989, he signed a certificate of final acceptance.

At the time of Amy's accident, there was a drop-off between the sidewalk and the adjacent earth of approximately four inches. Evans denied any allegations in the complaint of negligence and raised the affirmative defense that the walkway was constructed in accordance with the specifications of the school district's architect, the work had been accepted by the architect, and the specifications

were not so obviously dangerous that no competent contractor would follow them.

The trial court granted the motion for summary judgment, holding:

> "Upon consideration of the affidavits, deposition testimony, and applicable case law, the Motion of Defendant Evans Construction for Summary Judgment is granted. The Court finds that there are no material issues of fact concerning Evans' performance of the construction work in question in compliance with the contract with School District 186. As a matter of law, Evans had no duty to reinspect the property some 18 months after completion of construction to make certain that the appropriate landscape work was completed."

The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599, 169 N.E.2d 73, 76.) Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 954, 595 N.E.2d 201, 203; *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 823, 585 N.E.2d 1164, 1167; *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 240, 494 N.E.2d 830, 833.

In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) A triable issue precluding summary judgment exists where the material facts are disputed (*Ray*, 19 Ill. 2d at 599, 169 N.E.2d at 76), or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308). The use of summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct. *Shull*, 223 Ill. App. 3d at 824, 585 N.E.2d at 1167.

■ Plaintiff contends that Evans had a duty to prevent or correct subsidence even after the contract was completed and the work accepted. Plaintiff relies on *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369, and *McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 481 N.E.2d 787. Each of these cases involved a utility that excavated land and dug a trench to lay pipe. Following the completion of the installation of the gas pipe, the utility in each of these cases filled the trench but did not return to inspect the excavation. In each of these cases the utility was found to be negligent and liable to a plaintiff who was injured as a result of contact with a hole that had developed due to subsidence in the area where the utility had laid the pipe. (See *McDonald*, 1 Ill. App. 3d at 356-57, 272 N.E.2d at 376-77; *McMahon*, 135 Ill. App. 3d at 220-21, 481 N.E.2d at 793-94.) The court in *McMahon* noted that the "accepted-work" doctrine, which frees an independent contractor from liability to third persons for injuries received as a result of defective construction after the contractor has completed the contract and his work has been accepted by the employer, is no longer determinative of liability in Illinois. Instead, the question of liability is to be determined under traditional principles of negligence. The court concluded the fact that the utility had not returned to inspect or to fill in any subsidence amounted to a breach of duty. *McMahon*, 135 Ill. App. 3d at 221, 481 N.E.2d at 794.

The present case, however, differs from *McMahon* and *McDonald*; in those cases, no plans or specifications detailed exactly what the utility was to perform. Furthermore, in *McMahon* and *McDonald* there was no evidence that any owner had undertaken to be responsible for the property and its landscaping subsequent to accepting the completed work. Here, the work was in compliance with the specifications, and the school district, which accepted the work, was responsible for the subsequent landscaping and maintenance.

■ Negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 25, 594 N.E.2d 313, 318.) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Benner v. Bell* (1992), 236 Ill. App. 3d 761, 764-65, 602 N.E.2d 896, 898; *Gresham*, 229 Ill. App. 3d at 955, 595 N.E.2d at 203; W. Keeton, Prosser & Keeton on Torts §37, at 236 (5th ed. 1984).) The imposition of a

duty is an exercise of judicial policymaking. (See *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.) The doctrine of privity, by itself, no longer shields tortfeasors from the consequences of negligent conduct. However, "[w]hat does remain as a factor is the concern behind the privity requirement, that the duty imposed not constitute an unduly severe burden upon a defendant." (*Alm*, 134 Ill. App. 3d at 719, 480 N.E.2d at 1265.) This court has held that the relevant factors to be considered by a court in determining the existence of a duty include (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden upon the defendant. All of these factors are questions of policy. *Benner*, 236 Ill. App. 3d at 765, 602 N.E.2d at 899.

Here, we agree with the trial court that Evans did not have a duty to inspect the subsequent excavating and seeding of the dirt around the sidewalk. (See *Geever v. O'Shea & Sons Builders, Inc.* (1992), 233 Ill. App. 3d 917, 921-22, 600 N.E.2d 21, 24-25.) Otherwise, a contractor's duty to inspect the property could continue indefinitely. The evidence indicated Evans completed the work as specified and the school district accepted it. The school district was responsible for the subsequent landscaping and property maintenance, and would have been in a better position than the contractor to remedy any subsequent subsidence.

For reasons stated, we affirm the entry of summary judgment by the circuit court of Sangamon County.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.