GREGORY J. MILDER, Plaintiff-Appellant, v. MYRON L. VAN ALSTINE *et al.*, Defendants-Appellants (The City of Galesburg, Defendant-Appellee; Myron L. Van Alstine *et al.*, Counterplaintiffs-Appellants and Third-Party Plaintiffs-Appellants; Darrin J. Conklin, Counterdefendant-Appellant; Midwest Automatic Fire Sprinkler Company, Third-Party Defendant-Appellant).—GREGORY J. MILDER, Plaintiff-Appellee, v. MYRON L. VAN ALSTINE *et al.*, Defendants (Myron L. Van Alstine *et al.*, Counterplaintiffs-Appellants and Third-Party Plaintiffs-Appellants; Darrin J. Conklin, Counterdefendant-Appellee; Midwest Automatic Fire Sprinkler Company, Third-Party Defendant-Appellee).—GREGORY J. MILDER, Plaintiff-Appellee, v. MYRON L. VAN ALSTINE *et al.*, Defendants (Myron L. Van Alstine *et al.*, Counterplaintiffs-Appellees and Third-Party Plaintiffs-Appellees; Darrin J. Conklin, Counterdefendant-Appellee; Midwest Automatic Fire Sprinkler Company, Third-Party Defendant-Appellant).—GREGORY J. MILDER, Plaintiff-Appellee, v. MYRON L. VAN ALSTINE *et al.*, Defendants-Appellees (Myron L. Van Alstine *et al.*, Counterplaintiffs-Appellees and Third-Party Plaintiffs-Appellees; Darrin J. Conklin, Counterdefendant-Appellant; Midwest Automatic Fire Sprinkler Company, Third-Party Defendant-Appellee).

Third District   Nos. 3—91—0725, 3—91—0742 through 3—91—0744 cons.

Opinion filed June 29, 1992.

Michael K. Bush, of Carlin, Hellstrom & Bittner, of Davenport, Iowa (William J. Bush and Bryan Sylvestser, of counsel), for Gregory J. Milder.

R. Michael Henderson and David B. Collins, both of Quinn, Johnston, Henderson & Pretorius, of Peoria, for Myron L. Van Alstine and Gra-Bell Truck Lines, Inc.

Nathan R. Miller, of Miller, Hall & Triggs, of Peoria, for City of Galesburg.

George A. Goebel, of Davenport, Iowa, for Darrin J. Conklin.

Steven A. Wakeman and Lindsay W. Wright, both of Strodel, Kingery, Duree & Associates, of Peoria, for Midwest Automatic Fire Sprinkler Company.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Gregory J. Milder, brought an action to recover damages for injuries he sustained in a motor vehicle accident. The City of Galesburg (the City), one of the defendants, filed a motion to dismiss plaintiff's second amended complaint for failure to state a cause of action. The trial court granted the City's motion. Plaintiff appeals. We affirm.

On October 28, 1987, the plaintiff was a passenger in a pickup truck driven by defendant Darrin J. Conklin. The plaintiff and Conklin were alleged employees of third-party defendant Midwest Automatic Fire Sprinkler Co. The pickup truck was traveling east on Mulberry Street near its intersection with South Chambers Street in Galesburg, Illinois. Defendant Myron L. Van Alstine, an employee of defendant Gra-Bell Truck Lines, Inc., was traveling northbound on Chambers Street in a semitractor trailer when the vehicles collided in the intersection.

The only traffic control device located at the intersection was a yield sign on Chambers Street which was directed toward southbound traffic. The parties' vehicles were traveling east and north. The record shows that this intersection was unmarked for vehicles traveling east and north.

Plaintiff alleged in count IV of his second amended complaint that the City was negligent in the following manner: (1) the single yield sign, directed only at southbound traffic on Chambers Street, created confusion among motorists entering the intersection, leading to a condition that was not reasonably safe; (2) placement of a single traffic control device created an "asymmetrical" intersection; and (3) the City failed to warn motorists of the condition of the intersection and also failed to correct conditions of obscured vision at the intersection. Plaintiff further alleged that 37 accidents had occurred in the previous five years at the intersection, placing the City on notice of the dangerous condition of the intersection.

The City filed a motion to dismiss the complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619), which argued the City was immune from liability pursuant to section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—104). The trial court dismissed the plaintiff's second amended complaint with prejudice, and this appeal followed.

In determining the propriety of the dismissal of a complaint, we must accept all properly pleaded facts as true. Therefore, we are concerned only with the question of law presented by the pleadings. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538, 539.) A cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle the plaintiff to recover. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.

We note that the trial court dismissed the plaintiff's third amended complaint without providing any rationale. However, a reviewing court may affirm the decision of the trial court on any grounds supported by the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286, 527 N.E.2d 303, 305.

Plaintiff contends that a genuine issue of material fact exists as to whether the City's asymmetrical regulation of the intersection made it unreasonably dangerous by creating confusion for eastbound traffic on

Mulberry Street. The plaintiff theorizes that eastbound vehicles, when approaching the intersection, see to their left the back of the southbound yield sign and then mistakenly assume that northbound motorists are also confronted with a yield sign. Plaintiff argues that the asymmetrical regulation of the intersection creates a false sense of security and actually makes the intersection more dangerous than if it had not been regulated at all.

■■ In accordance with our supreme court's recent decision in *West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104, we hold that section 3—104 the Tort Immunity Act immunizes the City from the alleged acts of negligence. Therefore, we affirm the trial court's order dismissing count IV of plaintiff's second amended complaint for failure to state a cause of action against the City.

Further, based upon our supreme court's decision in *West*, we find that section 3—104 clearly provides *absolute* immunity to municipalities that fail to provide traffic signals and signs:

> "*Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide* regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 85, par. 3—104.

The plaintiff in *West*, traveling south on Lincoln Avenue, was struck by a northbound vehicle while attempting a left turn onto eastbound Bradley Street. The plaintiff alleged negligence against the City of Urbana for its failure to provide a left-turn arrow for southbound traffic. The court affirmed the trial court's grant of summary judgment in favor of the City. The court determined from an analysis of the legislative history of section 3—104 that "[t]he legislature *** clearly intended to enlarge the scope of section 3—104's immunity and to immunize *absolutely* the failure to initially provide a traffic control device, even where such failure might 'endanger the safe movement of traffic.' " (Emphasis in original.) (*West*, 147 Ill. 2d at 8, 588 N.E.2d at 1108.) Thus, the plaintiff's allegation of negligence against the City of Urbana for its failure to provide a particular traffic control device is conduct expressly immunized by section 3—104. See *Wood v. Village of Grayslake* (1992), 229 Ill. App. 3d 343, 354.

The court in *West* rejected plaintiff's contention that the immunity described in section 3—104 no longer attaches once the municipality

has notice that the lack of a particular traffic control device creates a dangerous condition. The court stated:

> "[S]ection 3—104 contains *no* language which expresses an intent to *limit* that section's immunity to situations in which the municipality was without notice that the lack of a particular device was unsafe. Furthermore, section 3—104 contains *no* language which indicates an intent to *impose* a duty on municipalities to provide a particular traffic control device where the municipality has notice that the failure to so provide has proved to be unsafe. Rather, section 3—104 clearly and unequivocally states that the municipality is *immune* from all liability arising out of the failure to provide a particular traffic control device." (Emphasis in original.) (*West*, 147 Ill. 2d at 7, 588 N.E.2d at 1107.)

Thus, section 3—104 has been found to provide immunity for failure to provide traffic control devices "*even if the governmental unit had notice of the hazardous condition of the roadway.*" (Emphasis added.) *Wood*, 229 Ill. App. 3d at 354.

In addition, the court in *West* rejected the plaintiff's argument that since the City had already undertaken to provide left turn devices for the intersection, concerns of symmetry obligated the City to install dual left-turn arrows in order for the immunity of section 3—104 to apply. (*West*, 147 Ill. 2d at 10, 588 N.E.2d at 1108.) Furthermore, the argument for requiring symmetrical traffic control in the instant appeal is even less compelling than the situation which existed in *West*. Unlike the vehicles in *West*, which were traveling in opposite directions on the same street, here the vehicles were traveling on different streets before they collided at the intersection of the two streets. Also, here neither vehicle observed any traffic control device since the City had not placed any devices at the intersection for traffic traveling east and north. Therefore, the potential for confusion alleged in the instant appeal is far less likely than the situation which existed in *West*.

■ Plaintiff also argues that even if the City were entitled to immunity for its initial failure to warn of the dangerous intersection, that immunity is no longer available once the City has notice of the existence of the dangerous condition by virtue of previous accidents. We disagree. Plaintiff relies on *Castorena v. Browning-Ferris Industries* (1991), 217 Ill. App. 3d 328, 577 N.E.2d 185, which held that immunity from liability for the initial failure to provide signs warning of a dangerous condition no longer exists once the public entity has notice of the dangerous condition. (*Castorena*, 217 Ill. App. 3d at 334,

577 N.E.2d at 188-89.) We note, however, that following the supreme court's decision in *West*, the court remanded *Castorena* for renewed consideration of the City of Elmhurst's liability in light of the *West* decision. (*Castorena v. Browning-Ferris Industries* (1992), 144 Ill. 2d 631, 588 N.E.2d 1192.) We view the supreme court's action in *Castorena* as an indication that the holding in *Castorena* is no longer viable after *West*. The supreme court in *West* made it clear that section 3—104's grant of immunity operates without substantial limitation. Further, the holding in *Castorena* is premised upon decisions which were specifically or implicitly overruled by the supreme court in *West*: *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213; *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19; and *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 560 N.E.2d 21. *West*, 147 Ill. 2d at 11, 588 N.E.2d at 1109; *Wood*, 229 Ill. App. 3d 343.

For the reasons indicated, we affirm the judgment of the circuit court of Knox County.

Affirmed.

BARRY, P.J., and HAASE, J., concur.