KENNETH CULVER *et al.*, Plaintiffs-Appellants, v. SARAH VELCOR *et al.*, Defendants-Appellees.

Second District No. 2—92—1063

Opinion filed July 15, 1993.

Walter D. Braud and Duane Thompson, both of Braud/Warner, Ltd., of Rock Island, for appellants.

Sarah Hansen Sotos and John J. Kohnke, both of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Kenneth Culver, Jackie Culver and Olive Culver, appeal after the trial court dismissed that portion of their complaint, counts IV, V and VI, filed against defendant, Jo Daviess County (the county). Sarah Velcor (correctly spelled Velsor) is a defendant not participating in this appeal. Plaintiffs contend that the trial court erred in allowing the county's motion to dismiss pursuant to section 2—615 of the Civil Practice Law (the Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))).

The well-pleaded facts are taken as true and are taken from counts IV, V and VI of plaintiffs' first amended complaint. On or about July 1, 1990, plaintiffs were driving in a westerly direction on Council Hill Road in Galena, Jo Daviess County. At the intersection of Council Hill Road and Route 84, plaintiffs' vehicle collided with Velsor's vehicle, which was traveling in a northerly direction on Route 84. Prior to July 1, 1990, there was a stop sign for westbound travelers on Council Hill Road at Route 84, which did not exist on that date because it had been knocked down or removed.

Plaintiffs further alleged that the county is a municipal corporation that owned, controlled and maintained certain roads, particularly Council Hill Road. Plaintiffs alleged that the county had a duty, pursuant to section 11—304 of the Illinois Rules of the Road (Ill. Rev. Stat. 1989, ch. 95½, par. 11—304 (now 625 ILCS 5/11—304 (West 1992))), to maintain and post traffic signs to notify the motoring public of dangerous conditions that exist on the roadway. The county had been notified by a county resident 48 hours before the accident in question that the stop sign was down. Plaintiffs claimed that the county breached one or more of the following duties:

> "a. Failed to put a stop sign in the appropriate location on or before the intersection with Route 84 or to notify the State of Illinois that the stop sign was down;
>
> b. Failed to take temporary emergency measures to notify the motoring public of the down stop sign;
>
> c. Failed to make the roadway reasonably safe for the traveling public at the aforesaid location."

As a proximate cause of the county's alleged negligence, all three plaintiffs were severely injured.

The county then filed a motion to dismiss counts IV, V and VI of plaintiffs' first amended complaint. The county contended that the State of Illinois was responsible for erecting and maintaining stop signs at the intersection of Council Hill Road and Route 84; that the first amended complaint failed to contain sufficient facts to state a cause of action; that the statute cited by plaintiffs does not create a duty owed by the county to plaintiffs; that the county owed plaintiffs no duty to initially post traffic signs, make improvements or warn of the condition complained of; and that the county is immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.* (now 745 ILCS 10/1—101 *et seq.* (West 1992))).

After hearing arguments from both parties, the trial court noted that the factual situation was identical to that in *Dinges v. Gabardi*

(1990), 202 Ill. App. 3d 732, in which this court found that Kane County had a duty to warn of the dangerous condition. The trial court further noted that *Dinges* was modified by *Castorena v. Browning-Ferris Industries* (1991), 217 Ill. App. 3d 328, which held that a public entity is immune from liability for initially failing to warn of a dangerous condition unless the public entity had prior notice of the dangerous condition. Because the trial court found that the county had a "common law" duty to warn of a dangerous condition when it had actual notice that a dangerous condition existed, the trial court denied the county's motion to dismiss counts IV, V and VI of plaintiffs' first amended complaint, but struck certain portions of the pleading. The trial court also certified a question of law, the applicability of sections 3—104 of the Tort Immunity Act, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), if proper application was made by the parties to appeal to the supreme court.

The county then filed a motion to reconsider in light of *West v. Kirkham* (1992), 147 Ill. 2d 1, a supreme court case that the county contended virtually overruled the *Dinges* case. The trial court held that *West* and *Wood v. Village of Grayslake* (1992), 229 Ill. App. 3d 343, "effectively eliminated" the rationale relied upon by the trial court when it denied the county's motion to dismiss. Thus, the trial court, on reconsideration, granted the county's motion to dismiss counts IV, V and VI of plaintiffs' first amended complaint. After the trial court ordered that there was no just reason for delaying enforcement or appeal of that order, plaintiffs filed a timely notice of appeal.

Plaintiffs contend that immunity is unavailable to the county because it has a duty to warn motorists of dangerous conditions and to maintain roads in a reasonably safe condition. Section 3—104 of the Tort Immunity Act only provides immunity to public entities that *initially* fail to provide traffic control devices or warning signs. Plaintiffs argue that this section does not provide immunity if the county fails to warn of a defective condition, in this case a downed stop sign. They claim that the case law that exists following the *Dinges* decision does not affect the county's duty to warn of a defective condition.

The county contends that it had no duty to warn motorists traveling westbound on Council Hill Road that the State failed to maintain its stop sign. Further, it argues that the cases decided after *Dinges*, particularly the *West* case, interpret section 3—104 of the Tort Immunity Act to provide *absolute* immunity to public entities for failure initially to provide traffic control devices, even when the failure might endanger the safe movement of traffic. The county claims that notice, or the lack of it, is irrelevant under that section of the Act.

A motion brought under section 2—615 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) admits all well-pleaded facts and reasonable inferences drawn therefrom. (*Boender v. Chicago North Clubhouse Association, Inc.* (1992), 240 Ill. App. 3d 622, 627.) The reviewing court must determine whether the allegations in the complaint are sufficient to state a cause of action when viewed in the light most favorable to the plaintiffs. (*Packard v. Rockford Park District* (1993), 244 Ill. App. 3d 643, 648.) "A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief." *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 873.

■ Section 3—104 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." Ill. Rev. Stat. 1991, ch. 85, par. 3—104 (now 745 ILCS 10/3—104 (West 1992)).

We begin our analysis with *Dinges* (202 Ill. App. 3d 732), a case which the parties agree is factually identical to the case at hand. One of the issues on appeal in *Dinges* was whether Kane County had a duty to warn motorists of a downed stop sign that was maintained by the State and located in a right-of-way purchased by the State Department of Transportation. (*Dinges*, 202 Ill. App. 3d at 733, 735.) Relying in part on *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 444-45, this court found that the duty to warn motorists of hazards adjacent to the roadway, even if the public entity did not control the hazard itself, did not arise from section 3—104 of the Tort Immunity Act, but from the common-law duty to maintain roads in a reasonably safe condition. (*Dinges*, 202 Ill. App. 3d at 736.) We also concluded that section 3—104 of the Tort Immunity Act was "virtually identical" to subsection "a" of the prior version of section 3—104, amended effective November 25, 1986, which provided:

"Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulatory signs." (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(a).)

Thus, we concluded that immunity was not available to Kane County for failing to warn of a condition which endangered the safe movement of traffic. *Dinges*, 202 Ill. App. 3d at 737.

If the *Dinges* case stood alone as the only relevant authority on the applicability of section 3—104 to our factual situation, plaintiffs' cause of action against the county clearly would survive a motion to dismiss. However, *Dinges* has been criticized, questioned, and adversely discussed in a number of cases, beginning with the dissent in *Dinges*. Justice Geiger, in dissent, noted that the amendment to section 3—104 of the Tort Immunity Act deleted a provision in section 3—104(b) providing that "immunity was available 'unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic.' " (*Dinges*, 202 Ill. App. 3d at 739 (Geiger, J., dissenting), quoting Ill. Rev. Stat. 1985, ch. 85, par. 3—104(b).) Thus, under the current version of section 3—104, immunity would be provided even if the traffic sign is necessary to warn of a condition which endangers this safe movement of traffic. Justice Geiger further noted that the common-law duty to maintain safe roadways does not encompass the duty to warn of a downed stop sign in the control of another public entity. The State's negligence could not result in the creation of a duty on the part of Kane County to warn of the dangerous condition caused by the State. *Dinges*, 202 Ill. App. 3d at 739-40 (Geiger, J., dissenting).

An expansive view of the immunity provided by section 3—104 of the Tort Immunity Act continued in *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074. There, the Appellate Court, First District, found that public entities are immune under section 3—104 "for failing to provide traffic-separating devices or barriers or *warning signs of any kind.*" (Emphasis added.) (*Newsome*, 202 Ill. App. 3d at 1078.) No attempt was made to interpret the meaning or intent of the word "initially" in section 3—104.

In *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, an accident occurred at the intersection of a State route and county road partly controlled by the City of Mattoon. The State controlled the traffic signs at the intersection. (*Fitt*, 215 Ill. App. 3d 475-77.) The reviewing court found that section 3—104 provided the city with the "*complete* defense of immunity from liability to plaintiff for failure to [post warning signs]." (Emphasis added.) (*Fitt*, 215 Ill. App. 3d at 481.) The court explicitly declined to follow *Dinges* and followed the *Newsome* court's broad interpretation of section 3—104 to provide immunity for failure to post *any* traffic warnings. (*Fitt*, 215 Ill. App. 3d at 482-83.) However, this was not a case where a previ-

ously existing traffic sign was down, but was a case where the plaintiff believed the existing traffic signs were inadequate.

Our court then addressed the *Dinges* rationale in *Castorena v. Browning-Ferris Industries* (1991), 217 Ill. App. 3d 328. There, the plaintiff's vehicle collided with a Browning-Ferris dumpster on a roadway controlled by the City of Elmhurst. (*Castorena*, 217 Ill. App. 3d at 329.) The trial court directed a verdict for the city based on section 3—104 of the Tort Immunity Act. (*Castorena*, 217 Ill. App. 3d at 333.) On review, we reversed the directed verdict because "section 3—104 only provides immunity for the failure *initially* to provide such [warning] signs." (Emphasis added.) (*Castorena*, 217 Ill. App. 3d at 334.) Because the city had notice that another driver had struck the dumpster, the need for warning signs was known and section 3—104 immunity was no longer available. To the extent that this interpretation of section 3—104 was different from that in *Dinges*, the *Dinges* holding was modified. (*Castorena*, 217 Ill. App. 3d at 334.) *Castorena* interpreted the word "initially" in section 3—104 to protect public entities from liability for dangerous conditions that existed only before the public entity had notice of such conditions. As we will discuss shortly, this rationale had limited viability.

The debate reached our supreme court in *West v. Kirkham* (1992), 147 Ill. 2d 1. The issue on appeal was whether the City of Urbana was immune from liability under section 3—104 for failing to provide a left-turn arrow for southbound traffic at the intersection where the collision between the parties occurred. (*West*, 147 Ill. 2d at 5.) In holding that the city was immune for initially failing to provide a left-turn arrow, the supreme court stated that the word "initially" in section 3—104 does not mean that liability will attach if the public entity is on notice that the lack of a traffic control device created a dangerous condition. (*West*, 147 Ill. 2d at 6.) Because the language of section 3—104 is unconditional and contains no notice provision, the court held that "section 3—104 clearly and unequivocally states that the municipality is *immune* from all liability arising out of the failure to provide a particular traffic control device." (Emphasis in original.) (*West*, 147 Ill. 2d at 7.) Further, the legislative history demonstrated to the court that section 3—104 provided *absolute* liability for failing initially to provide traffic control devices, even when the safe movement of traffic is endangered. *West*, 147 Ill. 2d at 8.

The case law following *West* further supports its broad interpretation of section 3—104 of the Tort Immunity Act. In *Wood v. Vil-*

*lage of Grayslake* (1992), 229 Ill. App. 3d 343, this court again discussed the "unsettled issue" of the extent to which section 3—104 of the Tort Immunity Act limits a public entity's common-law duty to warn motorists of hazardous roadway conditions. (*Wood*, 229 Ill. App. 3d at 352.) After reviewing the case law discussed above, this court found that section 3—104 exclusively governs the duty to *provide* traffic control devices, and not the duty to *maintain* such devices. (*Wood*, 229 Ill. App. 3d at 354.) We also overruled both *Janssen* and *Dinges*, based on *West*, to the extent that those cases relied on the prior version of section 3—104. *Wood*, 229 Ill. App. 3d at 354.

In *Milder v. Van Alstine* (1992), 230 Ill. App. 3d 869, the Appellate Court, Third District, followed the *West* case and interpreted section 3—104 as providing absolute immunity to public entities for failing initially to provide traffic control devices. (*Milder*, 230 Ill. App. 3d at 872.) Additionally, the *Milder* court discussed the *Castorena* case and its conclusion that immunity no longer applied if the public entity had notice of the dangerous condition. (*Milder*, 230 Ill. App. 3d at 873.) However, the court noted that our supreme court remanded *Castorena* for renewed consideration in light of the *West* decision (*Castorena v. Browning-Ferris Industries* (1992), 144 Ill. 2d 631), which it viewed as an indication that *Castorena* was no longer viable. *Milder*, 230 Ill. App. 3d at 874.

In *Castorena* (237 Ill. App. 3d 702) (*Castorena II*), this court abandoned the rationale that there was a notice exception to section 3—104 and held that the City of Elmhurst was immune for failing to provide a warning sign. (*Castorena II*, 237 Ill. App. 3d at 704.) We specifically followed the *West* court's interpretation of section 3—104. *Castorena II*, 237 Ill. App. 3d at 704.

Although the *West* case is factually distinguishable from our case, our supreme court's declaration of immunity under section 3—104 of the Tort Immunity Act is unequivocally broader than this court's interpretation of section 3—104 in *Dinges*. We are bound by its interpretation that section 3—104 of the Tort Immunity Act provides public entities with immunity from *all* liability for failing to provide traffic control devices, including warning signs. (*West*, 147 Ill. 2d at 7.) The *West* court found that such a broad interpretation of section 3—104 "better serves the policy behind the Tort Immunity Act *** to 'protect local public entities and public employees from liability arising from the operation of government.' (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).)" (*West*, 147 Ill. 2d at 11.) The "operation of government" includes the public entity's decision-

making power to provide traffic control devices on property it maintains or to provide signs to warn of downed traffic control devices on property maintained by another entity. As such, plaintiffs' attempt to distinguish a public entity's discretionary decision-making function from its common-law duty to warn of known dangers on or adjacent to its roadways is unpersuasive in light of the existing law.

Plaintiffs allege that the county was negligent for failing to put a stop sign in the appropriate location or failing to notify the State of the downed stop sign; failing to warn the motoring public of the downed stop sign; and failing to make the roadway reasonably safe. It is undisputed that the State had the duty to maintain traffic control devices at the intersection of Route 84 and Council Hill Road. Thus, the plaintiffs' injuries did not result from the county's failure to maintain the intersection. Because the county had no duty to maintain and because we are unaware of any duty on the part of the county to notify the State of a problem on State-controlled property, the county's duty to motorists was to warn them of the dangerous condition by providing some type of warning device on Council Hill Road. However, section 3—104 of the Tort Immunity Act immunizes the county from liability for failing initially to provide a warning sign. Even if the county is notified of the dangerous condition, the county receives immunity when deciding not to provide a sign warning of a dangerous condition. We hold that the trial court did not err in dismissing counts IV, V and VI of plaintiffs' first amended complaint based on section 3—104 of the Tort Immunity Act, as interpreted by our supreme court in *West*.

The order of the circuit court of Jo Daviess County dismissing counts IV, V and VI of plaintiffs' first amended complaint is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.