SANDRA THORNTON, Special Adm'r of the Estate of Alec Dante Thornton, Deceased, *et al.*, Plaintiffs-Appellants, v. KUMUDCHA SHAH *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—00—4121

Opinion filed August 8, 2002.—Rehearing denied October 16, 2002.

Mullen & Minella, of Chicago (John C. Mullen, Christopher Mullen, and Mary R. Minella, of counsel), for appellants.

Cassiday, Schade & Gloor, of Chicago (Michael J. Morrissey, Richard C. Huettel, Donald F. Ivansek, and Morgan M. Strand, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Sandra and Paul Thornton, brought this action against defendants, Kumudcha Shah, M.D., and Humana Health Plan, Inc. (Humana), seeking damages arising out of the *in utero* death of Alec Dante Thornton. Counts I and II of plaintiffs' fifth amended complaint, which are directed against Dr. Shah and sound in medical malpractice, allege that Dr. Shah failed to treat and respond properly to Sandra's medical condition after her symptoms were communicated to him via a January 7, 1994, telephone call from a Humana triage nurse. Counts III, IV and V of the complaint are directed against Humana and sound in contract, alleging that Humana failed to provide plaintiffs access to a Humana physician, as provided in the Humana Michael Reese HMO Plan (Humana Plan). Count VI of plaintiffs' complaint also is directed against Humana and sets forth a claim of negligent spoliation.

Humana filed a combined motion to dismiss counts III through VI pursuant to the Code of Civil Procedure (Code) sections 2—615 (735 ILCS 5/2—615 (West 2000)) (section 2—615) and 2—619(a)(5) (735 ILCS 5/2—619(a)(5) (West 2000)) (section 2—619(a)(5)), or alternatively, section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2000)) (section 2—619(a)(9)), under section 2—619.1 (735 ILCS 5/2—619.1 (West 2000)).

On September 11, 2000, the circuit court of Cook County granted Humana's motion and dismissed counts III through V with prejudice, pursuant to section 2—619(a)(5), and count VI with prejudice, under sections 2—615 and 2—619(a)(5). Plaintiffs' motion for reconsideration was denied. Plaintiffs appeal.

On appeal, plaintiffs question whether the circuit court (1) properly dismissed counts III through V of plaintiffs' fifth amended complaint as time-barred under section 13—212 (735 ILCS 5/13—212 (West 2000)) (section 13—212) of the Code; (2) properly dismissed count VI of plaintiffs' fifth amended complaint as untimely pursuant to section 13—205 (735 ILCS 5/13—205 (West 2000)) (section 13—205) of the Code and for failure to state a cause of action for negligent spoliation under section 2—615; and (3) abused its discretion by denying plaintiffs leave to file an action for fraud.

Plaintiffs were enrolled in the Humana Plan because Paul, as a United States Postal Service employee, contracted with Humana under the Federal Employees Health Benefits Program. The Humana Plan provided coverage for Paul and his family, which included medical and surgical benefits such as "[c]omplete obstetrical (maternity) care for all covered females, including prenatal, delivery and postnatal care by a Plan doctor." Guidelines for Humana Plan enrollees required patients to call their primary care doctor in the event of an emergency.

By deposition, Sandra testified that on January 7, 1994, at nine months of pregnancy, she attended her appointment with Dr. Shah at Humana's Calumet City clinic, during which he performed an internal exam and listened for the fetal heartbeat. Dr. Shah informed Sandra that she was dilated one or two centimeters and that everything was normal.

Thereafter, Sandra went to her place of employment, where, at 5 p.m., she began to experience heavy vaginal bleeding and sporadic contractions that were 15 to 20 minutes apart. Sandra paged Paul and notified him of the bleeding, telling him that she believed the baby would be delivered that evening. Sandra and Paul then agreed to meet at their home, where Sandra called her mother and told her, "Well, we're going to have the baby tonight and we're just waiting around now." Sandra told her mother that her vaginal blood flow was heavier

than her first pregnancy. Sandra's mother suggested that she call her doctor.

At 7 p.m., Sandra called the Humana after-hours telephone number that she had received from Dr. Shah during her appointment earlier that day. A woman identifying herself as a Humana nurse answered Sandra's telephone call. Sandra informed the nurse about her morning exam, that she was dilated one or two centimeters, bleeding and experiencing contractions 15 to 20 minutes apart. She also told the nurse that during her first pregnancy, she had experienced bleeding, but not as heavy as her current episode, and regular contractions, not sporadic contractions like the ones occurring for this pregnancy. Sandra asked the nurse to have a doctor call her. The nurse told Sandra that she would speak to Dr. Shah and call her back.

Sandra stated that an hour later, the Humana nurse called back and told her that Dr. Shah said the bleeding was normal, due to the internal exam from the earlier appointment, and to call the after-hours number when the contractions become 10 minutes apart. The nurse did not advise Sandra that if her problems continued, she should go to the hospital. Although Sandra's vaginal bleeding and contractions persisted from Friday, January 7, 1994, through Monday, January 10, 1994, the contractions never became 10 minutes apart and, following the medical advice given to her, Sandra did not go to the hospital.

Sandra called Dr. Shah on January 12, 1994, to request a verification letter excusing her husband from attending work the previous weekend. Sandra told Dr. Shah that she did not stop bleeding until Monday and that her contractions never became 10 minutes apart, to which Dr. Shah responded that her condition was "normal," and that he would see her on Friday for her next appointment.

On Friday, January 14, 1994, during her examination with Dr. Shah, Sandra noticed her file had a note attached to it which stated that Dr. Shah had spoken to her on Wednesday regarding a letter of substantiation for her husband. Sandra again asked Dr. Shah whether her heavy vaginal bleeding over the weekend was normal and Dr. Shah responded that her symptoms were normal so long as her contractions did not become 10 minutes apart. Dr. Shah then attempted to check the fetal heartbeat, but could not detect any fetal heart tones. Dr. Shah asked Sandra whether she had felt any movement by her baby the night before. Sandra responded that she did not know whether she had felt any movement. An ultrasound procedure confirmed that the fetal heart chambers were not moving.

Sandra testified that she went to the hospital that evening to deliver the fetus by induction. After the delivery, Sandra's other

obstetrician, Dr. Imre Hidvegi, showed both her and Paul that the fetus had died as a result of strangulation from the umbilical cord, which was wrapped five times around the fetus's neck.

In a letter to plaintiffs' counsel, dated February 14, 1997, Humana identified the two triage nurses who would have answered the after-hours telephone line on the night of January 7, 1994, as Jean Holcomb, R.N., and Patrice Eberhardt, R.N.

By deposition, Holcomb testified that she began working as a telephone triage nurse handling obstetrical/gynecological calls for Humana in 1989, for which she received 40 hours of training. Triage nurses followed a procedure manual and were required to fill out a form for each call, which included the patient's name, medical record, date of birth, telephone number, health center, doctor, date and time of call. The original form would be sent to the medical records department of the patient's health center and the telephone triage center would retain a duplicate copy of the form for four months.

Holcomb stated that she had no recollection of any conversation with Sandra on January 7, 1994. If a particular patient demanded to speak to a doctor, Holcomb would call the doctor and say that the patient has requested to speak only to a physician. Presented with a hypothetical scenario, Holcomb testified that if she had received a telephone call from a woman with Sandra's symptoms, she would have advised that woman to go to the emergency room.

Eberhardt testified in her deposition that the telephone triage form included a section regarding whether a physician was notified and the results of the patient's assessment. If a physician is contacted by a triage nurse regarding a patient, it is the physician's decision as to whether he or she personally returns the patient's telephone call. A nurse has the authority to convey his or her own advice without calling a physician. According to Eberhardt, a triage call always is documented in the patient's record.

Eberhardt stated that she had no recollection of speaking to Sandra on the night of January 7, 1994; however, if she had received a telephone call from a woman with Sandra's symptoms, she "definitely" would have advised that the woman needed to see a physician.

Dr. Shah testified by deposition that he first saw Sandra on December 7, 1993. He did not perform an internal examination on Sandra on January 7, 1994. Internal examinations may cause spotting of blood, but not heavy bleeding. A symptom of heavy bleeding at nine months of pregnancy is considered to be an obstetrical emergency.

For after-hours telephone consultations, Dr. Shah stated that patients would call the telephone number provided by the Humana clinic and then would be transferred to the doctor on-call. While work-

ing for Humana, Dr. Shah never experienced a problem when a patient attempted to contact him. When contacted by the triage nurse, Dr. Shah personally returned telephone calls immediately. If a patient called the after-hours service, a record of the call was put in the patient's medical chart.

Dr. Shah stated that he did not receive a call from the Humana triage nurse on January 7, 1994, reporting that Sandra was bleeding. Sandra's medical chart did not list a January 7, 1994, telephone call. If a patient with Sandra's symptoms called the after-hours telephone number, a triage nurse would have called Dr. Shah immediately, and Dr. Shah would have advised the patient to go to the hospital.

After the January 7, 1994, appointment, Dr. Shah did not speak to Sandra until her next appointment on January 14, 1994, during which he failed to detect a fetal heart tone. When Dr. Shah asked Sandra whether she felt the fetus move the night before, she responded affirmatively, but said she was not sure about the baby's movement on January 14. Dr. Shah recorded in Sandra's medical chart that she had felt the baby move the night before. He also recorded the performance of an ultrasound, which showed no fetal movements and no cardiac motion, indicating intrauterine fetal death. According to Dr. Shah, when he examined Sandra on January 14, he did not have a conversation with her regarding any prior bleeding that she had been experiencing.

Plaintiffs filed their initial medical malpractice complaint against Dr. Shah on February 23, 1995. Plaintiffs did not name Humana as a defendant until filing their second amended complaint on January 5, 1999.

Plaintiffs' fifth amended complaint, filed June 26, 2000, alleged in counts III through V, that Humana breached its contract with plaintiffs to provide necessary and appropriate medical care, including access to an obstetrical primary care physician on January 7, 1994. Plaintiffs pled that as a direct and proximate result of the breaches of contract, Alec Dante Thornton died on or about January 14, 1994, and that both Sandra and Paul sustained damages.

In count VI of their complaint, a negligent spoliation claim, plaintiffs alleged that Humana had a duty to retain all records relating to Sandra's medical care, including all records of telephone messages and telephone conversations between Sandra and the after-hours Humana nurse who answered the telephone triage line, between said nurse and Dr. Shah and between Sandra and Dr. Shah,[1] particularly in view of the severe and emergency nature of Sandra's condition

---

[1]Question 16 of plaintiff's interrogatories to Dr. Shah asked, "[o]n Janu-

on January 7, 1994.[2] Plaintiffs asserted that Humana negligently and/or willfully lost or destroyed records of telephone conversations from January 7, 1994, and January 12, 1994. Plaintiffs pled that as a direct and proximate result of Humana's loss or destruction of the aforesaid records of telephone calls, which were a part of Sandra's medical records, plaintiffs are missing key evidence relevant to prove a case of medical negligence against Dr. Shah and Humana, thereby sustaining injury.

On July 7, 2000, Humana moved to dismiss counts III through VI of plaintiffs' fifth amended complaint. Humana contended that counts III through V of the complaint should be dismissed pursuant to section 2—619(a)(5) and section 13—212 of the Code because plaintiffs' claims were time-barred by the statutes of limitations and repose for medical malpractice claims. Humana argued that counts III through V should be dismissed pursuant to section 2—615 of the Code because plaintiffs failed to allege a breach of contract. Also, Humana insisted dismissal of counts III through V was appropriate, pursuant to section 2—619(a)(9), due to plaintiffs' failure to attach either an affidavit from an attorney or a report from a health care provider setting forth that a reasonable and meritorious claim for medical malpractice exists, in contravention of section 2—622 (735 ILCS 5/2—622 (West 2000)) of the Code.

For count VI, Humana asserted that plaintiffs' negligent spoliation claim was insufficient at law, pursuant to section 2—615 of the Code. In addition, Humana argued that plaintiffs' claims in counts III through VI were preempted by the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1001 *et seq.* (1994)) and, thereby, should be dismissed under section 2—619(a)(9) of the Code.

On September 11, 2000, the circuit court dismissed counts III through V of plaintiffs' fifth amended complaint with prejudice, pursuant to Code section 2—619(a)(5), and count VI with prejudice, under

---

ary 7, 1994, after approximately 6:00 p.m., did you speak with any individual(s) relative to the medical condition of either Sandra Thornton or the decedent Alec Dante Thornton?" Dr. Shah answered, "[d]efendant objects to interrogatory no. 16 on the basis that it is unclear as to whether 'individual(s)' is limited to health professionals or includes any person and further seeks a narrative response which is more appropriately addressed in a deposition."

[2]A letter from defense counsel to plaintiffs' counsel, dated August 31, 1999, stated that defense counsel was advised by Humana that the logbooks for patient contact are retained only for six months and, therefore, no documentation between Sandra and Humana or between Humana and Dr. Shah exists.

Code sections 2—615 and 2—619(a)(5). The court found that counts III through V of the complaint arose out of medical negligence rather than a breach of contract and, therefore, plaintiffs' claims under those counts were time-barred. The court ruled that the negligent spoliation count was not timely filed and that plaintiffs failed to plead the elements of the claim.

On October 10, 2000, plaintiffs filed an amended motion to reconsider the circuit court's dismissal of Humana, which the court denied. Plaintiffs appeal.

# I

Plaintiffs initially assert that the circuit court improperly dismissed counts III through V of their fifth amended complaint because those counts pled actions for breach of contract, not medical malpractice. Therefore, plaintiffs contend their breach of contract action was timely filed within the statutory limitations period for both oral and written contracts pursuant to sections 13—205 (735 ILCS 5/13—205 (West 2000)) and 13—206 (735 ILCS 5/13—206 (West 2000)) of the Code. Because Humana is not a physician, dentist, registered nurse or hospital licensed under Illinois law, plaintiffs argue the court erred by applying section 13—212 in support of its dismissal of counts III through V.

Humana responds that section 13—212 applies because the action is based upon breach of contract for damages of injury or death "arising out of patient care." Humana argues that the facts upon which the breach of contract action are premised are the same as those that form the basis for claims against Dr. Shah, namely, Sandra's alleged telephone call to a Humana triage nurse and the nurse's and Dr. Shah's responses. According to Humana, plaintiffs' allegations reveal that the conduct with which Humana is charged is the failure to provide proper medical care and services to Sandra, thereby constituting a medical malpractice claim. Further, Humana asserts that the duty and damages plaintiffs claim sound in tort rather than contract because plaintiffs alleged that Humana's agents failed to adhere to a standard of care for Sandra's treatment and sought damages for the death of Alec Thornton, not compensation to recover for the "benefit of their bargain."

■ The purpose of a motion to dismiss is to provide a means to dispose of issues of law or easily proved issues of fact. *Timberline, Inc. v. Towne*, 225 Ill. App. 3d 433, 438, 587 N.E.2d 1149 (1992). Dismissal pursuant to section 2—619 is warranted only where it clearly is apparent that no set of facts can be proved that would entitle a plaintiff to recover. *Milder v. Van Alstine*, 230 Ill. App. 3d 869, 871, 595 N.E.2d

693 (1992) (*Milder*). Because all properly pleaded facts are accepted as true, a reviewing court is concerned only with the question of law presented by the pleadings. *Milder*, 230 Ill. App. 3d at 871. In ruling on a section 2—619 motion to dismiss, a court may consider pleadings, affidavits and deposition evidence. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). Dismissal pursuant to a section 2—619 motion based upon certain defects or defenses is reviewed *de novo*. *Lowe v. Ford Motor Co.*, 313 Ill. App. 3d 418, 420, 730 N.E.2d 58 (2000).

Plaintiffs rely on *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 630 N.E.2d 820 (1994) (*Solich*), in arguing that section 13—212 does not apply to Humana, a health maintenance organization (HMO), because HMOs are not one of the specifically described entities identified in the limitations statute. Two recently decided cases by the supreme court are instructive in determining whether to apply section 13—212 to HMOs. First, in *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 33, 46, 719 N.E.2d 756 (1999) (*Petrovich*), the court found that an HMO could be held vicariously liable for the medical malpractice of its independent contractor physicians under apparent and implied authority principles. Next, in *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 293, 730 N.E.2d 1119 (2000) (*Jones*), the court held that an HMO could be held liable for medical malpractice under the theory of institutional negligence.

■ In applying legal theories of liability to HMOs, the supreme court noted "[t]he principle that organizations are accountable for their tortious actions and those of their agents is fundamental to our justice system." *Petrovich*, 188 Ill. 2d at 29. Further, "HMO accountability is essential to counterbalance the HMO goal of cost-containment" and, because HMOs are profit-making entities, "accountability is also needed to counterbalance the inherent drive to achieve a large and ever-increasing profit margin." *Petrovich*, 188 Ill. 2d at 29. The *Jones* court noted Pennsylvania authority that expanded the theory of hospital institutional negligence to HMOs due to a recognition that "HMOs, like hospitals, consist of an amalgam of many individuals who play various roles in order to provide comprehensive health care services to their members." 191 Ill. 2d at 293, citing *Shannon v. McNulty*, 718 A.2d 828, 835-36 (Pa. Super. Ct. 1998).

The supreme court's findings of HMO liability for medical malpractice in *Petrovich* and *Jones* expanded the holding in *Solich* to include HMOs as a class of health care providers afforded consideration under section 13—212. Where an HMO can be held liable for medical malpractice under various theories of accountability, a plaintiff must file his or her cause of action within the time constraints set forth in section 13—212.

Here, plaintiffs filed their breach of contract action against Humana almost five years from the date of the subject occurrence on January 7, 1994. Section 13—212 provides a limitation of two years in which to file a breach of contract action for damages resulting in injury or death and arising out of patient care. 735 ILCS 5/13—212 (West 2000). Accordingly, extending the supreme court's findings in *Solich* to include HMOs for consideration under section 13—212, plaintiffs' breach of contract actions against Humana under counts III through V are time-barred.

## II

■ The question presented on review of the circuit court's dismissal of plaintiffs' negligent spoliation claim under section 2—615 is whether plaintiffs have alleged sufficient facts in the complaint which, if proved, would entitle them to relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). All well-pleaded facts in the complaint are taken as true. *Indeck North American Power Fund, L.P. v. Norweb, PLC*, 316 Ill. App. 3d 416, 430-31, 735 N.E.2d 649 (2000) (*Indeck*). Dismissal pursuant to a section 2—615 motion is proper only where the court can determine the relative rights of the parties solely from the pleadings. *Indeck*, 316 Ill. App. 3d at 430-31. When a complaint is dismissed pursuant to section 2—615, the standard of review is *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

■ An action for negligent spoliation can be stated under existing negligence law, requiring plaintiff to plead the existence of a duty owed by defendant to plaintiff, a breach of that duty, an injury proximately caused by the breach and damages. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194-95, 652 N.E.2d 267 (1995) (*Boyd*). Generally, there is no duty to preserve evidence; however, a duty may arise through an agreement, a contract or other special circumstances. *Boyd*, 166 Ill. 2d at 195. A defendant may voluntarily assume a duty by affirmative conduct. *Boyd*, 166 Ill. 2d at 195. Also, "plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove* an underlying lawsuit." (Emphasis in original.) *Boyd*, 166 Ill. 2d at 196.

■ In the case *sub judice*, count VI of plaintiffs' complaint properly pleads a duty and breach of that duty. It alleged that Humana triage nurses recorded patient information on forms that become part of a permanent medical record, which establishes that Humana voluntarily assumed a duty to preserve patient records by affirmative conduct. Plaintiffs' complaint charged that Humana breached that duty through the loss or destruction of records of the January 7, 1994, and January 12, 1994, telephone calls.

For causation, however, paragraph 36 of plaintiffs' negligent spoliation claim states "[t]hat as a direct and proximate result of Defendant, Humana's loss or destruction of the aforesaid records of telephone calls which were a part of Sandra Thornton's medical records, Plaintiff, Sandra Thornton, is missing key evidence relevant to prove a case of medical negligence against Kumudcha Shah, M.D., and Defendant, Humana, and Plaintiff [sic] has sustained injury as a result." Significantly, this paragraph does not assert specific facts explaining how the missing telephone records caused plaintiffs to be unable to prove an underlying lawsuit.

Accordingly, the circuit court's dismissal of count VI under section 2—615 was appropriate because plaintiffs' complaint fails to allege facts sufficient to state a cause of action for negligent spoliation. In light of this disposition, the statute of limitations question need not be addressed.

## III

Plaintiffs next argue that the circuit court erred by denying them leave to file an action for fraud against Humana.

■ The circuit court has discretion to allow or deny an amendment to a pleading and its decision will not be reversed absent an abuse of that discretion. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432, 712 N.E.2d 330 (1999) (*Hoffman Group*). To determine whether to allow an amended pleading, the court considers: "(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend." *Hoffman Group*, 186 Ill. 2d at 432. In this case, there is no proposed amendment on record to determine whether the amendment would cure defective pleadings or whether Humana would sustain surprise or prejudice. No abuse of discretion has been shown.

Based on the foregoing, the circuit court of Cook County properly dismissed counts III through VI of plaintiffs' fifth amended complaint.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.